CHAMPAIGN-URBANA PUBLIC HEALTH DISTRICT, Petitioner-Appellant, v. ILLINOIS LABOR RELATIONS BOARD, STATE PANEL, *et al.*, Respondents-Appellees.

Fourth District   No. 4—03—1081

Argued October 19, 2004.—Opinion filed December 13, 2004.

Frederic M. Grosser (argued), of Law Office of Frederic M. Grosser, of Champaign, and Jill Leka and Abigail C. Rogers, both of Seyfarth Shaw L.L.P., of Chicago, for appellant.

Lisa Madigan, Attorney General, of Chicago (Gary S. Feinerman, Solicitor General, and Jerald S. Post (argued), Assistant Attorney General, of counsel), for appellee State Labor Relations Board.

Gilbert Feldman, of Cornfield & Feldman, of Chicago, for appellee American Federation of State, County and Municipal Employees.

JUSTICE TURNER delivered the opinion of the court:

In September 2003, the American Federation of State, County and Municipal Employees, Council 31, AFL-CIO (AFSCME) filed petitions with the Illinois Labor Relations Board, State Panel (Board), to be certified as the representative of certain public employees of the Champaign-Urbana Public Health District (District). In October 2003, a unit-preference election was conducted, and voters favored a combined unit of professional and nonprofessional employees. In November 2003, the Board certified AFSCME as the exclusive representative of the employees. The District has sought review of that certification.

On review, the District argues (1) the Board's certification is void as a matter of law because the Board certified a representative under rules not lawfully adopted, (2) the Board arbitrarily combined two separate petitions into a single petition for recognition in a combined unit, and (3) the Board's certification of AFSCME as the bargaining representative was erroneous. We reverse and remand.

## I. BACKGROUND

On September 4, 2003, AFSCME filed with the Board two "Request[s] for Voluntary Recognition Certification" with respect to nonprofessional and professional employees of the District in case Nos. S—VR—04—002 and S—VR—04—006. Each petition excluded the employees covered by the other petition from the proposed bargaining unit. AFSCME indicated its request for recognition for the profes-

sional and nonprofessional employees of the District was based on "the recently-enacted legislation HB 3396." Further, an AFSCME organizer stated she had "submitted authorization cards as evidence of majority support."

On September 26, 2003, the Board sent a letter to the District, advising that it had received "the attached representation petition, filed pursuant to [s]ection 9(a)(5) of the Illinois Public [Labor] Relations Act [(5 ILCS 315/9(a)(5) (West 2002)) (Act)], *as amended.*" (Emphasis in original.) The letter advised the District that it was required to immediately submit an alphabetized list of names, job classifications, and signature exemplars of the employees in the unit. The District was notified it must respond to the petition within 14 days, raising any issues concerning the appropriateness of the bargaining unit and whether any employees should be excluded from the unit. Further, if the District believed "the petitioner obtained its showing of majority support through the use of fraud or coercion, [it] must provide clear and convincing evidence of that fraud or coercion" at the time of filing the response. The Board also required the District to post an enclosed "Notice to Employees" in conspicuous places for 14 consecutive days.

On October 1, 2003, the District's attorney, Frederic M. Grosser, sent a letter to the Board, indicating he had previously sent a facsimile transmission on September 12, 2003, requesting he be furnished with "copies of the signed authorization cards" referenced in the requests for voluntary recognition. Grosser stated the information was necessary for the District to determine an appropriate response. On October 6, 2003, the District provided the Board with an updated alphabetical list of names and job classifications of the employees in the units described in both of AFSCME's petitions and also included signatures from the added or new employees.

On October 14, 2003, the District sent a letter to the Board, indicating it "generally agrees" with the bargaining unit as proposed. The District stated it concurred "with the petition that this proposed bargaining unit for professional employees should exclude all non[ ]professional employees" because each group has "a different community of interest[s], including skills, functions[,] and licensing requirements." The District noted it had twice requested copies of signed authorization cards but had not received a response from the Board. Without the requested information, the District stated it was "unable to take any position at this time with respect to the propriety of the petition, except as otherwise set forth in this response." Also on October 14, 2003, the Board sent a letter to the District, indicating the Board "scheduled a unit[-]preference election" in these cases to be held on October 24, 2003.

On October 23, 2003, the District sent a letter to the Board, objecting to the Board's scheduled unit-preference election. The District stated the election appeared "contrary to the petitions filed by AFSCME" and it had "not been apprised of whether either petition [was] supported by a proper showing of interest." The District alleged it could "not find the basis in Illinois statutes or rules for the *** Board to initiate such a unit-preference election without first determining whether or not a majority of each proposed bargaining unit supports union representation."

The "Notice of Election" issued by the Board was posted by the District (certified on October 22, 2003) and indicated its purpose was to determine whether the employees named in the petition "wish to be represented in a single bargaining unit containing both professional and nonprofessional employees, or in separate bargaining units of professional or nonprofessional employees." The notice described two units: "Unit A (professional employees) and Unit B (nonprofessional employees)."

The "Tally of Ballots," dated October 24, 2003, indicated that of the 51 eligible voters in group A (professional employees), 33 votes were cast in favor of a combined unit, while 13 were cast against a combined unit. Of the 27 eligible voters in group B (nonprofessional employees), 17 votes were cast in favor of a combined unit, while 5 were cast against it.

On November 21, 2003, the Board issued a "Tally of Majority Interest," finding of the 85 employees in the appropriate unit, 49 signed valid cards for AFSCME, declaring AFSCME had prevailed in the determination of majority support. The Board thereby certified that a majority of the employees in the petitioned-for unit had indicated support for AFSCME and that labor organization was the exclusive representative of all the employees in the unit. On December 23, 2003, the District petitioned this court for administrative review of the certification-of-representative order certifying AFSCME as the exclusive representative of all employees in the unit.

## II. ANALYSIS

### A. Jurisdiction

The Board argues this court lacks jurisdiction in this matter. We disagree.

■ Section 9(i) of the Act (5 ILCS 315/9(i) (West 2002)) provides for direct review by the appellate court of the Board's certification that a labor organization has been fairly and freely chosen by a majority of employees in an appropriate bargaining unit. Any direct appeal by an aggrieved party shall be filed within 35 days from the date a

copy of the decision sought to be reviewed was served upon the party affected by the decision. 5 ILCS 315/9(i) (West 2002).

In the case *sub judice*, the Board issued its certification of representative on November 21, 2003. The District indicated it received the order on November 24, 2003. The proof of service signed by the District's attorney certified he served the petition for administrative review by mail on December 23, 2003. The Board stamped December 23 and 24, 2003, as the dates of receipt of the petition. The petition was filed in this court on December 29, 2003.

Under Supreme Court Rule 373 (155 Ill. 2d R. 373), the time of filing materials required to be filed within a specified time will be the date they are received by the clerk of the reviewing court. However, if the materials are received after the due date, "the time of mailing shall be deemed the time of filing." 155 Ill. 2d R. 373. In this case, the District's attorney certified he served the petition for administrative review by depositing copies in the mail on December 23, 2003. As that date falls within the 35-day time limit for filing a direct appeal, we have jurisdiction over this matter.

## B. Standing

AFSCME argues the District lacks standing to raise the issues on appeal. We disagree.

■ According to the Act, any person aggrieved by a final order certifying a representative may apply for and obtain judicial review. 5 ILCS 315/9(i) (West 2002). In this case, the District was a party to the representation proceeding, and the certification binds the District to a collective-bargaining relationship with AFSCME. Thus, the District has standing to appeal the Board's final order.

AFSCME argues the District has no cognizable legal interest to give it standing. However, AFSCME's reliance on *American Federation of State, County & Municipal Employees, Council 31 v. Ryan*, 347 Ill. App. 3d 732, 807 N.E.2d 1235 (2004), and *American Federation of State, County, & Municipal Employees, Council 31 v. Ryan*, 332 Ill. App. 3d 866, 773 N.E.2d 739 (2002), is unpersuasive. Those cases dealt with the Illinois Health Facilities Planning Act (Planning Act) (20 ILCS 3960/1 through 19.6 (West 2000)) and whether private lawsuits could be utilized to enforce the Planning Act's permit requirements. AFSCME has offered no argument on how the analysis of the Planning Act in those cases translates into a lack of standing for the District under the Act here.

AFSCME attempts to highlight the "statutory language and the historical background" of section 9(a—5) of the Act (5 ILCS 315/9(a—5) (West Supp. 2003)) as reason for the District's alleged lack of

standing. AFSCME's argument is again unpersuasive. Section 9(a—5), which took effect on August 5, 2003, deals with the designation of an exclusive representative and how the Board may ascertain the employees' choice of employee organization. Section 9(a—5) did not change section 9(i) and its provision for an aggrieved party to seek judicial review in the appellate court as to issues involving a certification of a representative. As the Act provides for appeal of a certification of representative and the District's interests are implicated in this case, the District has standing, and this court will hear its appeal.

## C. Standard of Review

■ Judicial review of an agency's decisions is governed by the Administrative Review Law (Review Law) (735 ILCS 5/3—101 through 113 (West 2000)). 5 ILCS 315/9(i) (West 2002); *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204, 692 N.E.2d 295, 301-02 (1998). The Review Law specifies that judicial review of a final administrative decision extends to all questions of law and fact presented in the record. 735 ILCS 5/3—110 (West 2002).

The Board's findings of fact are held *prima facie* true and correct and will only be reversed on appeal if they are against the manifest weight of the evidence. *Illinois Fraternal Order of Police Labor Council v. Illinois Local Labor Relations Board*, 319 Ill. App. 3d 729, 736, 745 N.E.2d 647, 653 (2001). A decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *City of Tuscola v. Illinois State Labor Relations Board*, 314 Ill. App. 3d 731, 733-34, 732 N.E.2d 784, 786 (2000). Where the issue before the reviewing court involves the Board's conclusions of law, however, the court's review is *de novo*. *Illinois Fraternal Order of Police*, 319 Ill. App. 3d at 736, 745 N.E.2d at 653.

## D. The Illinois Public Labor Relations Act

When it became effective in July 1984, the Act had the stated policy "to grant public employees full freedom of association, self-organization, and designation of representatives of their own choosing for the purpose of negotiating wages, hours[,] and other conditions of employment or other mutual aid or protection." 5 ILCS 315/2 (West 2002). The Act created the Illinois Labor Relations Board (5 ILCS 315/5 (West 2002)) and set forth the relationship parameters between public employers and exclusive representatives regarding, *inter alia*, the duty to bargain collectively (5 ILCS 315/7 (West 2002)), grievance procedures (5 ILCS 315/8 (West 2002)), elections (5 ILCS 315/9 (West 2002)), unfair labor practices (5 ILCS 315/10 (West 2002)), and the right to strike (5 ILCS 315/17 (West 2002)).

Since 1984, an "exclusive representative" meant a labor organiza-

tion that had been historically recognized by the public employer prior to the Act, voluntarily recognized by a public employer after the effective date of the Act, or determined by means of an election. 5 ILCS 315/3(f), 9(a) (West 2002). Under section 9(a)(1) of the Act (5 ILCS 315/9(a)(1) (West 2002)), a labor organization may petition for an election by demonstrating that 30% of the public employees in an appropriate unit wish to be represented by a labor organization as exclusive representative.

■ Effective August 5, 2003, Public Act 93—444 took effect and added subsection (a—5) to section 9 of the Act. Pub. Act 93—444, § 5, eff. August 5, 2003 (2003 Ill. Legis. Serv. 2377, 2378). Section 9(a—5) of the Act provides, in part, as follows:

> "The Board shall designate an exclusive representative for purposes of collective bargaining when the representative demonstrates a showing of majority interest by employees in the unit. If the parties to a dispute are without agreement on the means to ascertain the choice, if any, of employee organization as their representative, the Board shall ascertain the employees' choice of employee organization, on the basis of dues[-]deduction authorization and other evidence, or, if necessary, by conducting an election." 5 ILCS 315/9(a—5) (West Supp. 2003).

On September 22, 2003, the Board promulgated emergency rules based on Public Act 93—427 and Public Act 93—444, "legislation provid[ing] a new means by which the Board can certify unions as the exclusive representative for a group of employees." 27 Ill. Reg. 15563 (adopted September 22, 2003).

### E. Emergency Rule-making

The District argues the Board's "emergency rules" did not comply with the provisions of the Illinois Administrative Procedure Act (Procedure Act) (5 ILCS 100/1—1 through 15—10 (West 2002)) in this case. We agree.

■ "In adopting rules, administrative agencies must comply with the public[-]notice and comment requirements set forth in the Procedure Act." *Ogden Chrysler Plymouth, Inc. v. Bower*, 348 Ill. App. 3d 944, 957, 809 N.E.2d 792, 803 (2004). Thus, a state agency must give the public 45 days' notice of its intended action and accept comments, allow for public hearing if required, and give an additional 45-day notice period. 5 ILCS 100/5—40(b), (c) (West 2002). Unless a rule conforms with the public notice and comment requirements, "it is not valid or effective against any person or party and may not be invoked by an administrative agency for any purpose." *Kaufman Grain Co. v. Director of the Department of Agriculture*, 179 Ill. App. 3d 1040, 1047, 534 N.E.2d 1259, 1264 (1988).

Under section 5—45(b) of the Procedure Act, an agency may, upon finding an emergency exists, "adopt an emergency rule without prior notice or hearing upon filing a notice of emergency rule[-]making with the Secretary of State" (5 ILCS 100/5—45(b) (West 2002)). An " '[e]mergency' means the existence of any situation that any agency finds reasonably constitutes a threat to the public interest, safety, or welfare." 5 ILCS 100/5—45(a) (West 2002). "[T]he existence of an emergency is primarily a matter of agency discretion, yet courts are not conclusively bound by an agency's determination that an emergency exists." *Citizens for a Better Environment v. Pollution Control Board*, 152 Ill. App. 3d 105, 109, 504 N.E.2d 166, 169 (1987), citing *Senn Park Nursing Center v. Miller*, 118 Ill. App. 3d 733, 744, 455 N.E.2d 162, 170 (1983).

In *Citizens*, 152 Ill. App. 3d at 107, 504 N.E.2d at 167-68, the State challenged the emergency rule-making procedures implemented by the Pollution Control Board (PCB) under the Procedure Act. The PCB adopted emergency rules to guide the implementation of section 39(h) of the Environmental Protection Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1039(h)) pertaining to the deposit of hazardous waste streams in a permitted hazardous waste site. *Citizens*, 152 Ill. App. 3d at 107, 504 N.E.2d at 168. The Citizens for a Better Environment and the State argued the PCB lacked authority to adopt the emergency rule because no emergency existed. *Citizens*, 152 Ill. App. 3d at 108-09, 504 N.E.2d at 169.

The PCB argued the emergency rules would clarify section 39(h) concerning the extent of the Environmental Protection Agency to issue waste-stream authorizations. *Citizens*, 152 Ill. App. 3d at 109, 504 N.E.2d at 169. The PCB stated this rule would reduce uncertainty, the number of appeals to the PCB, and the need for judicial interpretation of section 39(h). *Citizens*, 152 Ill. App. 3d at 109, 504 N.E.2d at 169.

The First District found no facts had been presented "to show that without these emergency rules the public would be confronted with a threatening situation." *Citizens*, 152 Ill. App. 3d at 109, 504 N.E.2d at 169. The court noted the PCB's alleged ambiguity in section 39(h) did not amount to a threat to the public nor did the possibility of appeals indicate a threat. *Citizens*, 152 Ill. App. 3d at 109-10, 504 N.E.2d at 169. The court found that "the need to adopt emergency rules in order to alleviate an administrative need, which, by itself, does not threaten the public interest, safety, or welfare, does not constitute an 'emergency.' " *Citizens*, 152 Ill. App. 3d at 109, 504 N.E.2d at 169.

In *Senn Park Nursing Center v. Miller*, 104 Ill. 2d 169, 174-75, 470 N.E.2d 1029, 1032 (1984), three Illinois nursing-home facilities filed a

complaint against the Director of the Illinois Department of Public Aid (IDPA), claiming an emergency rule was void because no emergency existed as defined by the Procedure Act. The IDPA Director argued an emergency existed because a prior court decision created a risk of loss of federal matching funds and an emergency rule was necessary "to 'assure that inflation update factors are not overstated due to short[-]term fluctuations and prevent the system from providing a disincentive to cost containment.' " *Senn Park*, 104 Ill. 2d at 184, 470 N.E.2d at 1037.

The supreme court found the fear of a risk of loss of federal matching funds was unreasonable under the circumstances. *Senn Park*, 104 Ill. 2d at 185, 470 N.E.2d at 1037. Further, the court found the risk "did not reasonably constitute a threat to the public interest, safety[,] or welfare." *Senn Park*, 104 Ill. 2d at 185, 470 N.E.2d at 1037. As to the second alleged reason for an emergency rule, the court noted the importance of assuring inflation factors were not overstated or disincentives to cost containment were not created did not amount to a threat to the public interest, safety, or welfare. *Senn Park*, 104 Ill. 2d at 186, 470 N.E.2d at 1037-38.

In this case, the Board promulgated emergency rules on September 22, 2003, to implement the statutory changes. The Board stated its reason for emergency as follows: "This emergency rule[-]making implements [Public Act] 93—427 and [Public Act] 93—444, which became effective immediately on August 5, 2003. The legislation provided a new means by which the Board can certify unions as the exclusive representative for a group of employees." 27 Ill. Reg. 15563 (adopted September 22, 2003). The Board used the newly adopted rules in determining whether a majority of the District's employees favored collective representation.

Based on the record before us, we fail to see how the implementation of emergency rules was necessary to counter a threat to the public interest, safety, or welfare. As the District points out, unions could have sought and obtained representation of the employees by holding a secret-ballot election or presented the cards collected by a majority of employees to the employer for voluntary recognition. Alternatively, unions could utilize the new legislation after the rules were promulgated.

■ AFSCME and the Board argue the immediate effective date of Public Act 93—444 allowed for the passage of emergency rules. However, no facts have been presented to show that without the emergency rules the public would be confronted with a threatening situation. AFSCME's insinuation that chaos would reign if the Board was required to follow the general rule-making requirements of the

Procedure Act is without merit and fails to establish a situation existed which reasonably constituted a threat to the public interest, safety, or welfare.

The reason for adopting an emergency rule "should be truly emergent and persuasive to a reviewing court and considerations of administrative and fiscal convenience alone do not satisfy that standard. Agencies may not adopt emergency rules to eliminate an administrative need that does not threaten the public interest, safety, or welfare." 2 Am. Jur. 2d *Administrative Law* § 210 (2004). Here, the Board's reason for implementing the emergency rules can best be characterized as one for administrative convenience and not because of any stated public threat. Thus, the rules adopted by the Board on September 22, 2003, were invalid, and the Board's certification of AFSCME as the exclusive representative was ineffective. In light of our decision, we need not address the District's remaining issues.

## III. CONCLUSION

For the reasons stated, we reverse the Board's order certifying AFSCME as the exclusive representative and remand the cause to the Board for further proceedings.

Reversed and remanded.

McCULLOUGH and KNECHT, JJ., concur.