THE COUNTY OF DU PAGE *et al.*, Petitioners, v. ILLINOIS LABOR RELATIONS BOARD, STATE PANEL, *et al.*, Respondents.

Second District   No. 2—04—0392

Opinion filed June 2, 2005.

James Baird and James J. Powers, both of Seyfarth Shaw, of Chicago, for petitioner Du Page County Sheriff.

Joseph E. Birkett, State's Attorney, of Wheaton (Lisa A. Hoffman and Thomas J. Stanfa, Assistant State's Attorneys, of counsel), for petitioner County of Du Page.

Jacalyn J. Zimmerman, of Illinois State Labor Relations Board, and Lisa Madigan, Attorney General, both of Chicago (Gary S. Feinerman, Solicitor General, and Jerald S. Post, Assistant Attorney General, of counsel), for respondent Illinois Labor Relations Board, State Panel.

John S. Rossi and Joseph R. Mazzone, both of Schenk, Duffy, McNamara, Phelan, Carey & Ford, Ltd., of Joliet, for respondent Metropolitan Alliance of Police.

Gilbert Feldman, of Cornfield & Feldman, of Chicago, for *amicus curiae* American Federation of State, County & Municipal Employees.

PRESIDING JUSTICE O'MALLEY delivered the opinion of the court:

Petitioners, the County of Du Page (County) and the Du Page County sheriff (Sheriff) (collectively, petitioners), seek administrative review of the certification of representative made by respondent the Illinois Labor Relations Board (Board), which certified respondent Metropolitan Alliance of Police, Du Page County Sheriff's Police Chapter No. 126 (MAP) (collectively, respondents), as the exclusive bargaining representative of certain sheriff's deputies employed by petitioners. We reverse the Board's order and remand the cause.

In 1987, some deputies employed by the Du Page County sheriff sought to organize into a union. To that end, the Fraternal Order of Police (FOP) filed a representation petition with the predecessor to the Board. The FOP sought to represent a unit comprised of only patrol deputies. This unit would have excluded deputies working in the court security and corrections divisions of the Sheriff's office. The rationale for excluding court security and corrections deputies was that they were not "peace officers" as defined by the Illinois Public Labor Relations Act (Act) (5 ILCS 315/3(k) (West 2002)). Petitioners opposed this attempt at unionization, fearing that the deputy workforce would become fragmented unless all deputies—patrol, court security, and corrections—were included in the same bargaining unit.

The Board's predecessor agreed in part with the FOP, ruling that deputies working in the patrol and court security divisions should be included in the bargaining unit and that deputies working in the corrections division should be excluded. Ultimately, however, the deputies rejected representation by the FOP, and the decision as to who should be included in the bargaining unit was mooted.

In 1993, MAP filed a representation petition, seeking to organize a portion of the Sheriff's deputies, including only deputies working in the patrol and court security divisions. The Board determined that, along with patrol and court security deputies, selected corrections deputies should also be included in the bargaining unit. A secret ballot election was held to ratify the union, but the deputies rejected representation by MAP.

In December 1999, MAP filed its second representation petition,

this time seeking to represent all Sheriff's deputies who qualified as "peace officers" under the Act (5 ILCS 315/3(k) (West 2002)). A fact-finding hearing was convened, and an administrative law judge concluded that the bargaining unit should be limited to those deputies in the administrative bureau, the law enforcement bureau, the fugitive apprehension unit within the corrections bureau, and a number of special stand-alone and interdepartmental units. The remaining deputies who worked in the corrections bureau would be excluded from the bargaining unit.

The Board confirmed the decision of the administrative law judge and directed that a secret ballot election be held among the eligible deputies. In May 2002, the election was held, and the eligible deputies again rejected representation by MAP. No appeal was taken of the Board's determination of which deputies qualify as "peace officers" under the Act.

Subsequently, the General Assembly amended the Act's certification process to include a "majority interest" procedure. Pub. Act 93—444, eff. August 5, 2003 (adding 5 ILCS 315/9(a—5) (West Supp. 2003)). By its terms, the amendment was to take effect upon becoming law. On August 5, 2003, the governor signed the amendment into law. See 5 ILCS 315/9(a—5) (West Supp. 2003).

As a result of the passage into law of the amendment to the Act, the Board promulgated emergency rules to govern the procedures for processing majority interest representation petitions. The Board justified the emergency rules: "This emergency rulemaking implements PA 93—427 and PA 93—444 which became effective immediately on August 5, 2003. The legislation provided a new means by which the Board can certify unions as the exclusive representative for a group of employees." 27 Ill. Reg. 15563 (adopted September 22, 2003).

On December 18, 2003, MAP filed a majority interest representation petition, again seeking to represent deputies not in the corrections bureau of the Sheriff's office. The Board requested the Sheriff to submit objections, and the Sheriff filed a position statement and requested a fact-finding hearing based on its assertion of changed circumstances. On March 19, 2004, the Board issued a "Tally and Certification" in which it rejected the Sheriff's objections as well as the request for a fact-finding hearing. The Board's tally showed that 99 out of 186 eligible deputies favored representation by MAP. The tally did not include over 180 deputies assigned to the corrections bureau. Also on March 19, 2004, the Board issued a certification of representative in which MAP was certified as the exclusive bargaining representative for deputies below the rank of sergeant in the administrative bureau, the law enforcement bureau, and the fugitive

apprehension unit within the corrections bureau (along with various stand-alone and interdepartmental units). Pursuant to the Act, on April 22, 2004, petitioners timely filed their petition for administrative review in this court. See 5 ILCS 315/9(i) (West 2002); 735 ILCS 5/3—113 (West 2002); 155 Ill. 2d R. 335.

Petitioners raise a number of issues. First, they contend that the Board's emergency rules were improperly enacted, rendering invalid the Board's decision on MAP's majority interest representation petition. Next, petitioners contend that the Board deviated from the plain language of section 9(a—5) of the Act (5 ILCS 315/9(a—5) (West Supp. 2003)) by not requiring MAP to submit proper evidence of majority interest. Petitioners also argue that, in the 2002 fact-finding hearing, the Board erred in determining which deputies are "peace officers" under the terms of the Act, and petitioners seek to revisit this determination. Last, petitioners contend that the Board erroneously refused to allow a new fact-finding hearing in light of newly acquired evidence on the issue of which deputies are "peace officers."

During the pendency of this case, the Appellate Court, Fourth District, issued *Champaign-Urbana Public Health District v. Illinois Labor Relations Board, State Panel*, 354 Ill. App. 3d 482 (2004). Petitioners filed a motion requesting leave to cite *Champaign-Urbana Public Health District* as additional authority in support of their position on appeal. We granted petitioners' motion and ordered supplemental briefing to allow the parties an opportunity to comment on that case.

■ As an initial matter, we note that the *amicus curiae*, American Federation of State, County and Municipal Employees, Council 31, AFL-CIO (AFSCME), challenges petitioners' standing to challenge the Board's enactment of the emergency rules. AFSCME made this same argument in *Champaign-Urbana Public Health District*, 354 Ill. App. 3d at 486-87, in which the same standing issue was raised. The court there noted that, while Public Act 93—444 added section 9(a—5) to the Act, it did not affect section 9(i) of the Act, which confers standing on any party aggrieved by a final order certifying a representative. *Champaign-Urbana Public Health District*, 354 Ill. App. 3d at 487.

AFSCME asserts that, pursuant to *American Federation of State, County & Municipal Employees, Council 31 v. Ryan*, 347 Ill. App. 3d 732 (2004), petitioners lack a cognizable legal interest sufficient to confer standing. *Ryan*, however, dealt with whether private lawsuits could be used to enforce permit requirements of the Health Facilities Planning Act (20 ILCS 3960/1 *et seq.* (West 2000)). AFSCME does not demonstrate how the analysis in *Ryan* leads to the conclusion that, here, petitioners lack standing under the Act. We reject AFSCME's argument.

AFSCME also states that the history and language of section 9(a—5) of the Act demonstrate the legislature's intention to exclude the employer from the representation proceedings in the case of a majority interest petition. As noted above, however, Public Act 93— 444 did not amend section 9(i) of the Act. Because an aggrieved party may seek review of a certification of representative, and because petitioners' interests are implicated in this case, they have standing to maintain this appeal. See *Champaign-Urbana Public Health District*, 354 Ill. App. 3d at 487.

■ Before turning to petitioners' substantive arguments, we must first review the principles that guide our consideration of the issues before us. The standard of review applied to an agency's decision depends upon whether the issue presents a question of fact or a question of law. *Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 369 (2002). Where the issue is purely a question of law, we review it *de novo. Carpetland*, 201 Ill. 2d at 369. Where the issue is the assessment of the agency's purely factual findings, we deem those findings to be *prima facie* true and correct, and we review them under the manifest weight of the evidence standard. *Carpetland*, 201 Ill. 2d at 369. Where the issue presents a mixed question of law and fact, we employ the intermediate, clearly erroneous standard of review. *Carpetland*, 201 Ill. 2d at 369. Under the clearly erroneous standard, we are less deferential to the agency than we would be if the agency's decision were solely factual, because the agency's decision was "based on fact-finding that [was] inseparable from the application of law to fact." *Carpetland*, 201 Ill. 2d at 369. Under this standard, "[w]e will reverse only if, after review of the entire record, we are ' "left with the definite and firm conviction that a mistake has been committed." ' " *Carpetland*, 201 Ill. 2d at 369, quoting *AFM Messenger Service Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001), quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 92 L. Ed. 746, 766, 68 S. Ct. 525, 542 (1948).

■ In their petition for administrative review, petitioners argue that the emergency rules under which MAP's majority interest representation petition was considered were improperly created and promulgated, because there was no "emergency" under the Administrative Procedure Act (5 ILCS 100/1 *et seq.* (West 2002)). The Administrative Procedure Act provides a procedure by which an agency may create and implement administrative rules and regulations. 5 ILCS 100/5—40 (West 2002). Among other things, the general rulemaking provision sets forth the requirements of public notice and a minimum time frame during which formal hearings must be held

and comments on the proposed rules must be received. In contrast, where the agency determines that an "emergency" exists, it may adopt emergency rules for a period of no more than 150 days without following the requirements of the general rulemaking provision (5 ILCS 100/5—40 (West 2002)). 5 ILCS 100/5—45(b), (c) (West 2002). The Administrative Procedure Act defines "emergency" as "the existence of any situation that any agency finds reasonably constitutes a threat to the public interest, safety, or welfare." 5 ILCS 100/5—45(a) (West 2002). The Administrative Procedure Act does not otherwise define the terms comprising its definition of "emergency."

Petitioners argue that the Board's emergency rules implementing section 9(a—5) of the Act are invalid, as they were promulgated without the existence of an actual emergency—an actual threat to the public interest, safety, or welfare. Instead, petitioners assert that the Board created and implemented the emergency rules merely as an administrative convenience.

Little case law exists to guide us in our determination of the propriety of the Board's enactment of the emergency rules at issue here. Generally, an agency's recognition of the existence of an emergency is primarily a matter of its discretion; however, courts are not conclusively bound to accept the agency's determination that an emergency exists. *Citizens for a Better Environment v. Pollution Control Board*, 152 Ill. App. 3d 105, 109 (1987). In *Citizens for a Better Environment*, the emergency rules at issue involved a statute passed in 1981 and scheduled to become effective on January 1, 1987. *Citizens for a Better Environment*, 152 Ill. App. 3d at 107-08. In June 1986, the Pollution Control Board began hearings on the adoption of rules to implement the amended statute on January 1, 1987. Thereafter, in October 1986, the Pollution Control Board adopted emergency rules relating to the amended statute. *Citizens for a Better Environment*, 152 Ill. App. 3d at 108. The Pollution Control Board justified its actions because the emergency rules would reduce the number of appeals from its determinations and would ease the transition period when the final rules would be adopted. Further, the Pollution Control Board noted that the amended statute was not self-executing and that emergency rules were necessary to effectuate the amended statute. *Citizens for a Better Environment*, 152 Ill. App. 3d at 109. The appellate court found that these reasons and circumstances were insufficient to support the determination that an emergency existed, especially where the Pollution Control Board's own inaction and tardiness in enacting rules meant that the effective date of the amended statute would pass before any regularly enacted rules would be in place. *Citizens for a Better Environment*, 152 Ill. App. 3d at 109-10.

Further, the court noted that the administrative convenience to be engendered by the emergency rules was not the standard by which the emergency rulemaking provision of the Administrative Procedure Act could be invoked to bypass the public notice and comment requirements of the general rulemaking provision of the Administrative Procedure Act; rather, the court emphasized that there must exist an actual threat to the public interest, safety, or welfare. *Citizens for a Better Environment*, 152 Ill. App. 3d at 109-10.

In reaching this result, the court relied heavily on *Senn Park Nursing Center v. Miller*, 118 Ill. App. 3d 733 (1983). There, the court did not accept that the agency's self-created "emergency" justified the use of the emergency rulemaking provision of the Administrative Procedure Act to attempt to extricate itself from the problems caused by its failure to follow the correct procedures in the first place. *Senn Park*, 118 Ill. App. 3d at 744-45.

Recently, the Appellate Court, Fourth District, considered whether the emergency rules promulgated in the wake of the adoption of section 9(a—5) of the Act complied with the requirements of the Administrative Procedure Act. *Champaign-Urbana Public Health District*, 354 Ill. App. 3d 482. In considering this question, the court reviewed both *Citizens for a Better Environment* and *Senn Park*, as well as the requirements of the Administrative Procedure Act. The court noted that the Board's stated justification for resorting to emergency rulemaking sounded almost entirely in the realm of administrative convenience. *Champaign-Urbana Public Health District*, 354 Ill. App. 3d at 491. As a result, the emergency rules were invalidly enacted and the Board's certification of representative was ineffective. *Champaign-Urbana Public Health District*, 354 Ill. App. 3d at 491.

We find *Champaign-Urbana Public Health District* to be squarely on point. Here, the Board's justification for its resort to the emergency rulemaking provision of the Administrative Procedure Act is virtually nonexistent. Respondents point to no facts demonstrating any sort of threat to the public. The amendment to the Act did not prohibit public employees from either organizing altogether or organizing by utilizing only the newly added provision in section 9(a—5) of the Act; instead, it merely added another method by which public employees would be permitted to organize. Thus, there was no existing situation constituting a threat to the public interest, safety, or welfare. See *Champaign-Urbana Public Health District*, 354 Ill. App. 3d at 490-91. Accordingly, we hold that the Board invalidly adopted the emergency rules.

The Board assails the propriety of the Fourth District's decision in *Champaign-Urbana Public Health District*, but not its applicability to

this case. As the Board's arguments challenging the result in *Champaign-Urbana Public Health District* are largely similar to those it raises as to this appeal, we see no need to respond further to them, except in the context of the Board's arguments as to this appeal. AFSCME challenges both the propriety of the decision as well as its applicability to this appeal. As to the applicability, AFSCME argues that the fact that the agency may have invalidly enacted (for purposes of argument) the emergency rules does not render the order void, thereby divesting the agency of jurisdiction. Rather, the order is merely voidable and the agency's jurisdiction is not subject to collateral attack. We find this argument to be nonresponsive. Petitioners do not challenge the jurisdiction but, rather, the propriety of the order entered under invalid rules. Thus, petitioners have properly attacked the substance of the rules, and the decision in *Champaign-Urbana Public Health District*, which deals with precisely the same issue, is squarely applicable to this matter as well. AFSCME's challenges to the propriety of the decision are also largely similar to those raised herein, and we will also deal with them in the context of the arguments raised as to this appeal.

Respondents attempt to conjure the requisite emergency by noting that the legislature's determination that the amendment would become immediately effective would be frustrated if the Board had to wait the necessary time to proceed under the general rulemaking provision of the Administrative Procedure Act (5 ILCS 100/5—40 (West 2002)). According to respondents, the immediate effectiveness of the amendment created the emergency that the emergency rules were enacted to address. We disagree. Again, we note that the amendment provided an alternative for public employees seeking to organize—it did not terminate their ability to organize using the previously existing methods. The Board asserts that the legislative intent and public interest would have been frustrated by at least six months had it not employed the emergency rulemaking provision to promulgate the emergency rules. While true, this argument does not demonstrate that an emergency existed. Rather, it demonstrates the administrative convenience providing the impetus to create the emergency rules.

Respondents also attempt to distinguish *Citizens for a Better Environment* by noting that, there, the Pollution Control Board's delay and inaction caused the emergency that it claimed required emergency rules in response. While this is true, and while it is also true that the Board here did not bring about the situation caused by the amendment of the Act, these facts do not change the central fact that the emergency rules advanced the Board's administrative interests and were not required to address a threat to the public inter-

est, safety, or welfare. Indeed, it fairly may be said that the Board's decision to bypass the public notice and comment requirements of the general rulemaking provision of the Administrative Procedure Act was as much a threat to the public interest, safety, and welfare as was the situation the Board was addressing, because the public interest embodied in the Administrative Procedure Act was frustrated by the Board's bypassing the public notice and comment requirements. We find respondents' attempt to distinguish *Citizens for a Better Environment* to be unavailing.

As noted above, the Board invalidly adopted the emergency rules. Administrative agencies must comply with the public notice and comment requirements of the Administrative Procedure Act. *Champaign-Urbana Public Health District*, 354 Ill. App. 3d at 488. Unless a rule conforms with the public notice and comment requirements, "it is not valid or effective against any person or party and may not be invoked by an administrative agency for any purpose." *Kaufman Grain Co. v. Director of the Department of Agriculture*, 179 Ill. App. 3d 1040, 1047 (1988). Here, the emergency rules are invalid, as not being promulgated in conformance with the public notice and comment requirements of the Administrative Procedure Act. As a result, the Board's order also is not valid or effective, because it employed the invalid emergency rules. Accordingly, we reverse the Board's certification of MAP. In light of our decision on this issue, we need not address petitioners' remaining issues.

For the foregoing reasons, the order of the Illinois Labor Relations Board certifying MAP as the exclusive representative is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

BOWMAN and KAPALA, JJ., concur.