No. 2--06--0380          Filed: 8-24-07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE COUNTY OF Du PAGE and THE Du PAGE COUNTY SHERIFF, | ) ) ) ) | On Petition for Administrative Review from the Illinois Labor Relations Board, State Panel. |
| Petitioners, | ) ) | |
| v. | ) ) | ILRB Case No. S--RC--05--153 |
| ILLINOIS LABOR RELATIONS BOARD, STATE PANEL, and METROPOLITAN ALLIANCE OF POLICE, Du PAGE COUNTY SHERIFF'S POLICE CHAPTER No. 126, | ) ) ) ) ) ) | |
| Respondents. | ) | |

JUSTICE O'MALLEY delivered the opinion of the court:

For at least the second time, petitioners County of Du Page (County) and Du Page County sheriff (Sheriff) (collectively, petitioners) seek administrative review of the certification of representative made by respondent Illinois Labor Relations Board, State Panel (Board), certifying respondent Metropolitan Alliance of Police, Du Page County Sheriff's Police Chapter No. 126 (MAP) (collectively, respondents) as the exclusive bargaining representative of certain sheriff's deputies employed by petitioners. Petitioners contend that the Board erred by excluding deputies who were assigned to the corrections bureau of the Sheriff's office from the bargaining unit. Petitioners also contend that the Board misinterpreted the statutory evidentiary requirements under the majority interest provision of the Illinois Public Labor Relations Act (Act) (5 ILCS 315/9(a--5)

(West 2004)) necessary to certify a representative. We agree with petitioners' latter point and vacate the Board's order and remand.

While involving a new petition for representation, many of the same aspects of this case have been previously recounted in County of Du Page v. Illinois Labor Relations Board, State Panel, 358 Ill. App. 3d 174 (2005) (County of Du Page I). For clarity, we again summarize the factual and procedural history surrounding the current petition for representation in the case at bar.

In 1987, the Fraternal Order of Police (FOP) sought to organize some, but not all, of the deputies employed by the Sheriff. The FOP sought to represent a bargaining unit comprised of deputies assigned only to the patrol unit and to exclude deputies in the court security and the corrections divisions in the Sheriff's office. The FOP justified the scope of the bargaining unit by alleging that the deputies in the court security and corrections divisions did not qualify as peace officers under section 3(k) of the Act (now codified at 5 ILCS 315/3(k) (West 2004)). Petitioners opposed this attempt at unionization, fearing that the deputy workforce would become fragmented unless all deputies--patrol, court security, and corrections--were included in the same bargaining unit.

The Board's predecessor agreed in part with the FOP, ruling that deputies working in the patrol and court security divisions could be included in the bargaining unit and that deputies working in the corrections division should be excluded. The FOP appealed the decision to allow deputies in the court security division to be included in the bargaining unit, but this court affirmed the determination that deputies in the court security division were "peace officers" under the Act. See Fraternal Order of Police, Lodge No. 109 v. Illinois Labor Relations Board, 189 Ill. App. 3d 914 (1989). Ultimately, however, the deputies rejected representation by the FOP, and the decision as to who should be included in the bargaining unit was rendered moot.

The County and the Sheriff also appealed the decision of the predecessor to the Board. We dismissed the appeal, however, reasoning that, because the FOP's attempt to organize the Sheriff's deputies had been rebuffed and its representation petition dismissed by the predecessor to the Board, there was nothing for the County and the Sheriff to appeal. See County of Du Page v. Fraternal Order of Police, Lodge No. 109, 183 Ill. App. 3d 1027 (1989). We also held that the decision of the predecessor to the Board would not act as res judicata against the County or the Sheriff in subsequent decisions. County of Du Page, 183 Ill. App. 3d at 1034.

In 1993, MAP tried to organize a group of the Sheriff's deputies consisting of those deputies working in the patrol and court security divisions. The Board determined that, along with patrol and court security deputies, selected corrections deputies should also be included in the bargaining unit. A secret ballot election was held to ratify the union, but the deputies rejected representation by MAP.

In December 1999, MAP filed its second representation petition, this time seeking to represent all Sheriff's deputies who qualified as "peace officers" under the Act (5 ILCS 315/3(k) (West 2004)). After a fact-finding hearing, an administrative law judge concluded that the bargaining unit should be limited to those deputies in the administrative bureau, the law enforcement bureau, the fugitive apprehension unit within the corrections bureau, and a number of special stand-alone and interdepartmental units. The remaining deputies who worked in the corrections bureau would be excluded from the bargaining unit.

The Board confirmed the decision of the administrative law judge and directed that a secret ballot election be held among the eligible deputies. In May 2002, the election was held, and the eligible deputies again rejected representation by MAP. No appeal was taken of the Board's determination of which deputies qualify as "peace officers" under the Act.

Subsequently, the General Assembly amended the Act's certification process to include a "majority interest" procedure, which allowed a union to be formed without undergoing a secret ballot election. Pub. Act 93--444, eff. August 5, 2003 (adding 5 ILCS 315/9(a--5)). By its terms, the amendment was to take effect upon becoming law. On August 5, 2003, the governor signed the amendment into law. See 5 ILCS 315/9(a--5) (West Supp. 2003).

Following the amendment to the Act, the Board promulgated emergency rules to govern the procedures for processing majority interest representation petitions. The Board justified the emergency rules: "This emergency rulemaking implements PA 93--427 and PA 93--444 which became effective immediately on August 5, 2003. The legislation provided a new means by which the Board can certify unions as the exclusive representative for a group of employees." 27 Ill. Reg. 15563 (adopted September 22, 2003). Ultimately, in February 2004, the Board promulgated its final rules addressing how majority interest petitions are to be conducted.

On December 18, 2003, MAP filed another representation petition, this time under the majority interest provision of the Act (5 ILCS 315/9(a--5) (West 2004)) and pursuant to the Board's emergency rules. MAP again sought to organize a bargaining unit that excluded the deputies assigned to the corrections bureau of the Sheriff's office while including those deputies who qualified as "peace officers." The Board solicited objections from the Sheriff, and the Sheriff filed a position statement and requested a fact-finding hearing based on its assertion of changed circumstances. Additionally, the Sheriff asserted that the Board's emergency rules were invalid, the majority interest procedure required MAP to present both dues deduction authorization cards and "other evidence" in addition to those cards before it could be certified, and there was additional evidence and changed circumstances to demonstrate that deputies assigned to the corrections bureau were "peace officers"

within the meaning of the Act. In February and March 2004, the Sheriff also submitted offers of proof, proposed evidence, and argument to the Board in support of the Sheriff's positions regarding unionization under MAP.

On March 19, 2004, the Board issued a "Tally and Certification" in which it rejected the Sheriff's objections and declined to hold a fact-finding hearing. The Board's tally showed that a majority of eligible deputies favored representation by MAP. The tally did not include over 180 deputies assigned to the corrections bureau. Also on March 19, 2004, the Board issued a certification of representative in which MAP was certified as the exclusive bargaining representative for deputies below the rank of sergeant in the administrative bureau, the law enforcement bureau, and the fugitive apprehension unit within the corrections bureau (along with various stand-alone and interdepartmental units). Respondents timely appealed. On June 2, 2005, this court determined that the Board's emergency rules were invalidly enacted and reversed the Board's order and remanded for further proceedings. County of Du Page I, 358 Ill. App. 3d at 183.

On June 15, 2005, MAP filed another representation petition, which is at issue in this appeal. MAP again sought to organize the deputies it asserted to be peace officers under the Act, in the same unit it had previously sought to create. The Sheriff again opposed the petition, contending that all deputies should be eligible for the bargaining unit. Also, the Sheriff again argued, among other things, that at least two kinds of evidence, dues deduction authorization cards and "other evidence" not specified, were required to make a showing of majority interest under section 9(a--5) of the Act (5 ILCS 315/9(a--5) (West 2004)), and a hearing needed to be held in order to consider new evidence that deputies assigned to the corrections bureau were "peace officers" under the Act. The Sheriff submitted an offer of proof and a supplemental position statement to the Board.

On March 23, 2006, the Board issued a "Tally and Certification" in which it determined that MAP had made a sufficient showing of interest in support of its petition. The Board also determined that there were no other issues that warranted a hearing and rejected the objections. The Board certified MAP as the exclusive collective bargaining representative for those deputies employed by the Sheriff who were below the rank of sergeant and who were assigned to the administrative bureau, the law enforcement bureau, the fugitive apprehension unit within the corrections bureau, and several stand-alone and interdepartmental units. Petitioners timely appeal. See 5 ILCS 315/9(i) (West 2004); 735 ILCS 5/3--113 (West 2004); 155 Ill. 2d R. 335.

On appeal, petitioners contend first that the Board erred by not finding that the deputies assigned to the corrections bureau were "peace officers" under the Act. Petitioners also contend that the Board erred by certifying MAP without requiring both dues deduction authorization cards and other evidence pursuant to section 9(a--5) of the Act. Petitioners raised a third argument on appeal, that MAP's 2005 representation petition, which was filed while there was a pending petition for leave to appeal to the supreme court on the previous representation petition resolved in County of Du Page I, was premature because MAP was already certified as the exclusive collective bargaining representative at that time while the petition for leave to appeal was pending. In its reply brief, however, the County expressly withdrew this contention. Petitioners also contend that the Board erred by refusing to hold a hearing on the proposed evidence they submitted on the issue of whether deputies assigned to the corrections bureau qualified as "peace officers." We find the second issue, the evidentiary requirement to prevail under the majority interest provision, to be dispositive and address it first.

Preliminarily, we note that, after the parties completed their briefing of the issues in this appeal, the Board filed a motion to strike petitioners' reply briefs because of formal defects in the briefs and also to strike a portion of the argument contained in the Sheriff's reply brief. Additionally, MAP filed a motion to modify or correct its prayer for relief in its response brief. These motions have been taken with the case. We have considered the Board's contentions and petitioners' responses and hereby deny the Board's motion to strike the reply briefs and argument. We grant MAP's motion to modify its prayer for relief.

We first consider the well-established principles guiding our review of the issues raised on appeal. The standard by which we review an issue on administrative review depends on whether the issue presents a question of law, a question of fact, or a mixed question of law and fact. County of Du Page I, 358 Ill. App. 3d at 179. We review a question of law de novo. County of Du Page I, 358 Ill. App. 3d at 179. We review the agency's factual findings under the manifest weight of the evidence standard. County of Du Page I, 358 Ill. App. 3d at 179. For a mixed question of law and fact, we review the agency's finding for clear error. County of Du Page I, 358 Ill. App. 3d at 179.

We now turn to petitioners' arguments regarding the evidentiary showing necessary to sustain a majority interest petition under section 9(a--5) of the Act. Section 9(a--5) provides:

"The Board shall designate an exclusive representative for purposes of collective bargaining when the representative demonstrates a showing of majority interest by employees in the unit. If the parties to a dispute are without agreement on the means to ascertain the choice, if any, of employee organization as their representative, the Board shall ascertain the employees' choice of employee organization, on the basis of dues deduction authorization and other evidence, or, if necessary, by conducting an election. If either party provides to the

Board, before the designation of a representative, clear and convincing evidence that the dues deduction authorizations, and other evidence upon which the Board would otherwise rely to ascertain the employees' choice of representative, are fraudulent or were obtained through coercion, the Board shall promptly thereafter conduct an election. The Board shall also investigate and consider a party's allegations that the dues deduction authorizations and other evidence submitted in support of a designation of representative without an election were subsequently changed, altered, withdrawn, or withheld as a result of employer fraud, coercion, or any other unfair labor practice by the employer. If the Board determines that a labor organization would have had a majority interest but for an employer's fraud, coercion, or unfair labor practice, it shall designate the labor organization as an exclusive representative without conducting an election." 5 ILCS 315/9(a--5) (West 2004).

The Board's regulations for implementing section 9(a--5) provide:

"(2) Representation Cases Involving Majority Interest Petitions

(A) The showing of interest in support of a majority interest petition may consist of authorization cards, petitions, or any other evidence that demonstrates that a majority of the employees wish to be represented by the union for the purposes of collective bargaining.

(B) Any evidence submitted as a showing of interest must contain legible signatures and each signature must be dated by the employee.

(C) The showing of interest shall be valid only if signed within 6 months prior to the filing of the petition.

(D) Where signatures are used to determine showing of interest, the Board will not accept copies of the documents bearing such signatures. The Board also will not count signatures from employees who were not employed by the employer on the date the majority interest petition was filed.

(E) The showing in interest shall include the name of the petitioner, and shall state that by signing the card the employee acknowledges that if a majority of his/her co-workers in an appropriate unit sign evidence of majority support, the card can be used by the petitioner to obtain certification as the employees' exclusive representative without an election. This provision shall not apply to evidence of majority support signed prior to February 19, 2004.

(F) Evidence of majority support signed prior to August 5, 2003[,] is invalid for determining majority support." 80 Ill. Adm. Code §1210.80(d)(2), amended at 28 Ill. Reg. 4172, eff. February 19, 2004.

Petitioners make several arguments based on the foregoing provisions. First, petitioners argue that section 9(a--5) sets out an evidentiary standard for a showing of majority interest consisting "of dues deduction authorization and other evidence." 5 ILCS 315/9(a--5) (West 2004). Relatedly, petitioners contend that the Board's regulations are invalid because they contradict the requirements of section 9(a--5) by providing that a majority interest showing may consist of either dues deduction authorization cards or other evidence. See 80 Ill. Adm. Code §1210.80(d)(2)(A), amended at 28 Ill. Reg. 4172, eff. February 19, 2004. Petitioners also contend that the Board likely applied the invalid regulations and did not require MAP to supply both "dues deduction authorization and other evidence" in order to demonstrate the showing of majority interest by the eligible deputies.

Petitioners' initial two arguments require us to interpret section 9(a--5), and as this involves statutory interpretation, our review is de novo. See Strategic Energy, LLC v. Illinois Commerce Comm'n, 369 Ill. App. 3d 238, 251 (2006). Petitioners' remaining argument involves the assessment of the evidence appearing of record, and we will review whether the Board's decision was against the manifest weight of the evidence. County of Du Page I, 358 Ill. App. 3d at 179.

Petitioners argue that section 9(a--5) sets forth a requirement that both dues deduction authorization cards and other evidence be submitted in order to sustain a showing of majority interest. In interpreting a statute, the court's primary goal is to determine and give effect to the intent of the legislature. Harroun v. Addison Police Pension Board, 372 Ill. App. 3d 260, 263 (2007). The best indicator of the legislature's intent is the language of the statute, which, if clear and unambiguous, should be given effect as written. Harroun, 372 Ill. App. 3d at 263. It is not proper for the court to depart from the plain language of the statute by reading into it exceptions, limitations, or conditions that conflict with the legislature's clearly expressed intent. Harroun, 372 Ill. App. 3d at 263. Where the statute is clear and unambiguous, it must be applied as it is written, without resorting to extrinsic aids to statutory construction. People v. Perry, 224 Ill. 2d 312, 323 (2007). If the language of the statute is ambiguous, requiring the court to construe its language, we must construe the statute, if possible, so that no term is rendered superfluous or meaningless. Perry, 224 Ill. 2d at 323; Harroun, 372 Ill. App. 3d at 263. The canons and maxims of statutory construction are not themselves rules of law but rather are aids to determine the legislative intent and must yield to that intent. Perry, 224 Ill. 2d at 324.

Petitioners contend that section 9(a--5) requires the Board to determine a showing of majority interest "on the basis of dues deduction authorization and other evidence." (Emphasis added.) 5

ILCS 315/9(a--5) (West 2004). Petitioners note that "and" is usually conjunctive and that, in section 9(a--5), there is nothing to indicate that "and" is meant disjunctively. Petitioners conclude that, based on the legislature's use of "and," at least two types of evidence are necessary to sustain a showing of majority interest and one of those types of evidence must be dues deduction authorization cards.

Respondents contend that the word "and" in the phrase, "dues deduction authorizations, and other evidence," is meant to be understood in its several, disjunctive sense. Respondents contend that "and" is used interchangeably with "or" depending on the context. According to respondents, the sentence in section 9(a--5) (5 ILCS 315/9(a--5) (West 2004)):

> "If either party provides to the Board, before the designation of a representative, clear and convincing evidence that the dues deduction authorizations, and other evidence upon which the Board would otherwise rely to ascertain the employees' choice of representative, are fraudulent or were obtained through coercion, the Board shall promptly thereafter conduct an election"

illustrates that "and" is meant to be disjunctive by reference to the word "otherwise." Respondents argue that, "[i]f the Board could <u>otherwise</u> rely' on 'other evidence,' then dues deduction authorization cards are not required in every instance." (Emphasis in original.) Thus, respondents dispute petitioners' construction of section 9(a--5).

Both parties' constructions of section 9(a--5) are reasonable. Further, the multiple references to "dues deduction authorization and other evidence" appear to have differing meanings, leading to potential confusion and ambiguity. We therefore determine that the provision is ambiguous and

resort to statutory construction to attempt to discern the legislative intent. See Perry, 224 Ill. 2d at 324.

Having carefully considered both parties' arguments and considering the tools of statutory construction, we agree with petitioners' position. Several considerations lead us to this conclusion. We look first to the grammar of the provision. First, "other evidence," if not given meaning apart from "dues deduction authorization" cards, would necessarily encompass dues deduction authorization cards, thereby rendering the words "dues deduction authorization" wholly superfluous. When interpreting a statutory provision, we must give meaning to each word employed in the statute and will not presume that the statute contains surplusage within its provisions. Harris Bank of Roselle v. Village of Mettawa, 243 Ill. App. 3d 103, 115 (1993). Here, interpreting "and" disjunctively effectively renders "dues deduction authorization" redundant to "other evidence," thereby violating one of the fundamental tenets of statutory construction.

Next, the sentence relied upon by respondents differs from the sentence that specifies the evidentiary burden. The sentence that specifies the evidentiary burden to sustain a showing of majority interest reads:

"If the parties to a dispute are without agreement on the means to ascertain the choice, if any, of employee organization as their representative, the Board shall ascertain the employees' choice of employee organization, on the basis of dues deduction authorization and other evidence, or, if necessary, by conducting an election." 5 ILCS 315/9(a--5) (West 2004).

The sentence relied upon by respondents commands the Board to conduct an election if the evidence of majority support were demonstrated to have been procured by fraud or coercion:

"If either party provides to the Board, before the designation of a representative, clear and convincing evidence that the dues deduction authorizations, and other evidence upon which the Board would otherwise rely to ascertain the employees' choice of representative, are fraudulent or were obtained through coercion, the Board shall promptly thereafter conduct an election." 5 ILCS 315/9(a--5) (West 2004).

Respondents' argument does make sense in the context of the particular sentence. A party need not show that both the dues deduction authorization cards and the other evidence are tainted by fraud or coercion to mandate an election, only one or the other, as well as both. The addition of the comma after "dues deduction authorization" in the election sentence serves to underscore the possible joint and several meaning of "and" in the sentence. The lack of a comma in the evidentiary burden sentence suggests that "and" is meant in its joint and not several sense. Further, "otherwise" does not mean "in lieu of" as suggested by respondents. Instead, it commonly means "under different circumstances." See Webster's Third New International Dictionary 1598 (1986). Respondents suggest that the Board can rely on "other evidence" instead of or in lieu of "dues deduction authorization" cards when determining whether the employees' choice of representative was obtained through fraud or coercion. "Otherwise" refers to the different circumstance of evidence untainted by fraud or coercion. Taken together, the sentences and the varying meanings of "and" coherently mesh. Both dues deduction authorization cards and unspecified other evidence are necessary to demonstrate a showing of majority interest. However, if one or both types of evidence are shown to have been obtained through fraud or coercion, then an election must be conducted.

Turning from grammatical considerations to the other tools of statutory construction, we note that "dues deduction authorization" is a term of art. Its use in section 9(a--5) stands in marked

contrast to the language employed in section 9(a) of the Act requiring a 30% showing of interest to initiate an election of representative. Section 9(a), which culminates in a secret ballot election to recognize the representative, requires the process to be initiated only by a petition "demonstrating that 30% of the public employees" wish to be represented by a specific representative. 5 ILCS 315/9(a)(1) (West 2004). By contrast, to make a showing of majority interest, the employees must demonstrate majority interest "on the basis of dues deduction authorization and other evidence." 5 ILCS 315/9(a--5) (West 2004). The difference in the language employed in the election provision (5 ILCS 315/9(a) (West 2004)) and the majority interest provision (5 ILCS 315/9(a--5) (West 2004)) supports the conclusion that the legislature intended that a different evidentiary showing is needed under each provision. See In re K.C., 186 Ill. 2d 542, 549-50 (1999) ("It is well established that, by employing certain language in one instance and wholly different language in another, the legislature indicates that different results were intended"). While both the election and the majority interest provisions discuss a showing of interest, the election provision makes no specific evidentiary requirement for the threshold 30% showing of interest (5 ILCS 315/9(a) (West 2004)), whereas the majority interest provision specifies a particular evidentiary threshold in order that the showing of majority interest be accomplished.

Last, considering the legislative history of the provision, we conclude that the majority interest provision is intended to stand as an alternative to the election provision, whereby a representative may be certified. The showing of majority interest is equivalent to the election. This is demonstrated by the comments of one of the sponsors of the majority interest provision:

"[Representative] Black: *** The Senate Amendment changes [the Bill] somewhat, but the underlying Bill is still in force. And that . . . that says, if I have in my possession, a

majority of cards signed by employees that say they want to unionize, the union can then bypass the election. Correct?

[Representative] McKeon: No, Representative. That is, in fact, the election.

\*\*\*

Black: Oh, the card becomes the election?

McKeon: Right.

\*\*\*

Black: \*\*\* [The amendment] makes the intent much more onerous by mandating the employers voluntary recognition of a bargaining unit. Is that . . . is that your interpretation of the Senate Amendment?

McKeon: Well, yes, it is in the sense as I responded to your original question. This is in lieu of a . . . a meeting for the purposes of election. In that case, if the board certified the election results as valid, in other words there's no fraud or deception, that they shall designate that as the representative labor organization.

Black: Okay.

McKeon: This . . . this in sense . . . in the original language that we put in there, we made it consistent with the card check, when that's used in lieu of an election." 93d Ill. Gen. Assem., House Proceedings, May 28, 2003, at 153 (statements of Representatives Black and McKeon).

Thus, the legislature intended and understood that the showing of majority interest pursuant to section 9(a--5) would be an equivalent to the election process. It makes sense, then, that the majority interest showing requires a specific evidentiary burden while the showing of interest in the election

provision, which has been held to be preliminary and not subject to judicial review (see County of Kane v. Illinois State Labor Relations Board, 165 Ill. App. 3d 614, 619-20 (1988) (the existence of the 30% showing of interest is a step in the election process and is not itself subject to appellate review)), does not specify an evidentiary burden. For these reasons, then, we are persuaded that the majority interest provision requires that both dues deduction authorization and other evidence be submitted demonstrating that a majority of the employees support representation by the named organization.

In a related argument, petitioners contend that the Board's administrative regulations are contrary to the requirements of the Act and, therefore, are invalid. It is well established that "an administrative body cannot extend or alter the enabling statute's operation by the exercise of its rulemaking powers." Department of Revenue v. Civil Service Comm'n, 357 Ill. App. 3d 352, 364 (2005). "If an agency promulgates rules that are beyond the scope of the legislative grant of authority or that conflict with the statute, the rules are invalid." Department of Revenue, 357 Ill. App. 3d at 364; see also Greco v. McHenry County Sheriff's Department Merit Comm'n, 267 Ill. App. 3d 303, 306 (1994) (agency rule that conflicts with statute is invalid). Petitioners argue that the Board's regulations implementing section 9(a--5) do not require that dues deduction authorization cards be a part of the evidence establishing a showing of majority interest and that this omission directly contradicts the requirements of the statute. We agree.

We turn to the regulations promulgated by the Board. They state, pertinently: "The showing of interest in support of a majority interest petition may consist of authorization cards, petitions, or any other evidence that demonstrates that a majority of the employees wish to be represented by the union for the purposes of collective bargaining." 80 Ill. Adm. Code §1210.80(d)(2)(A), amended

at 28 Ill. Reg. 4172, eff. February 19, 2004. The regulation does not require dues deduction authorization cards. It also does not require two forms of evidence, one of which is dues deduction authorization cards. As we determined above, section 9(a--5) requires two forms of evidence, the dues deduction authorization cards and other, unspecified evidence. The Board's regulations require only one form of evidence and do not require that dues deduction authorization cards be used to support the showing of majority interest. Based on this, we hold that the Board's regulations regarding the evidence necessary to support a showing of majority interest conflict with the plain requirements of section 9(a--5) and, therefore, are invalid.

In their final section 9(a--5)-based argument, petitioners contend that the Board's decision certifying MAP as the collective bargaining representative was against the manifest weight of the evidence. This contention is subdivided into two parts. First, petitioners contend that the Board's decision on a majority interest petition is inherently reviewable. We agree. The Board's decision results in the designation of an exclusive collective bargaining representative (or the dismissal of the majority interest petition). 5 ILCS 315/9(a--5) (West 2004). This is a final order, which is expressly subject to administrative review. 5 ILCS 315/9(i) (West 2004).

Respondents argue that the underlying evidence supporting a majority interest petition is confidential and that the employer does not have a right to review it. This contention is misplaced. Respondents equate the majority interest petition of section 9(a--5) with the 30% showing of interest threshold to initiate an election of a collective bargaining representative under section 9(a). This argument misses the mark. As we have noted above, the majority interest petition is equivalent to the secret ballot election, as the outcome determines whether a certain organization will be certified as the exclusive representative. Thus, the majority interest showing stands in the same position as

the election under section 9(a). In order to give effect to section 9(i), authorizing administrative review, then, the Board's decision on a majority interest petition must be subject to some sort of meaningful appellate review. This would mean, at a minimum, the reviewing court must be able to ascertain that the evidence submitted to the Board in support of the majority interest petition was the type and amount sufficient to demonstrate that a majority of the eligible employees supported or rejected the particular organization as the exclusive representative. Therefore, we hold that, even for a majority interest petition, the Board's decision is subject to meaningful appellate review.

Next, petitioners contend that the Board's decision was not supported by the evidence in the record. Petitioners note that, in its brief in another pending case,[1] MAP admitted that it typically does not seek or submit dues deduction authorization cards from employees when submitting a majority interest petition. We take judicial notice of this concession. People v. Dye, 23 Ill. App. 3d 453, 456 (1974) (a court may take judicial notice of the authenticity of the record in another case pending before it); see also Bobber Auto Truck Plaza v. Department of Revenue, 143 Ill. App. 3d 614, 618 (1986) (appellate court may take judicial notice of facts in an administrative review proceeding). We agree that this concession supports a reasonable inference that dues deduction authorization cards were not submitted to the Board, contrary to the requirements, as we discerned above, of section 9(a--5) of the Act. Further, our review of the record indicates that there is nothing submitted of record to demonstrate that the Board properly received the required forms and amount of evidence to render its decision designating MAP as the exclusive collective bargaining representative. Accordingly, because there is no evidence of record to support the Board's decision, and because the Board committed legal error in enacting regulations that contradicted the

---

[1] Forest Preserve District of Du Page County v. Illinois Labor Relations Board, No. 2--06--0781.

requirements of section 9(a--5) of the Act, we infer that MAP submitted evidence in conformance with the Board's invalid regulations rather than the Act. Therefore, we hold that the Board's decision was against the manifest weight of the evidence.

We note that respondents raise concerns over breaching the anonymity protections of the employees who might be seeking to organize union representation, and the chilling effect on unionization that review of the majority interest petition might entail. We note further, however, that petitioners appear to be sensitive to such concerns and have requested only that they be allowed to review such redacted evidence that demonstrates majority interest on the part of the eligible deputies while maintaining the anonymity of the deputies. We certainly see no problems in providing for some sort of review of the redacted evidence in support of a majority interest petition. Further, because the majority interest petition stands in lieu of an election, and to allow the meaningful review of the Board's decision, the Board must adopt some sort of regulation that provides for the submission of the evidence it relied upon to the reviewing court and follows the mandates of section 9(a--5). We imagine that the submission of redacted dues deduction authorization cards and other evidence will both preserve the employees' anonymity and allow the employer to have the same rights of review as provided in section 9(a) regarding the secret ballot election of a representative. However, the invalid regulations as currently set forth contradict the evidentiary requirements of section 9(a--5) as well as frustrate the reviewing court's ability to meaningfully review the Board's decision under section 9(i).

Because MAP's petition was processed by the Board pursuant to invalid regulations and in contradiction of the requirements of section 9(a--5) of the Act, we vacate the Board's decision to certify MAP as the exclusive representative. Based on our resolution of this issue, we need not

address petitioners' remaining contentions regarding the proper designation of those deputies eligible to be considered "peace officers" under the Act and to be included in the proposed bargaining unit.

For the foregoing reasons, the order of the Illinois Labor Relations Board certifying MAP as the exclusive representative is vacated, and the cause is remanded for further proceedings.

Vacated and remanded.

BOWMAN and ZENOFF, JJ., concur.