(Nos. 27779, 27780, 27781.—

JOHN P. MORIARTY, Inc., Appellant *vs.* FRANCIS B. MURPHY, Director Labor, Appellee.—R. E. DOODY *et al.,* doing business as Standard Grading and Construction Co., Appellants, *vs.* FRANCIS B. MURPHY, Director of Labor, Appellee.—Same Appellants *vs.* Same Appellee.

*Opinion filed May 16, 1944.*

WHITTY & McGAH, of Chicago, for appellants.

GEORGE F. BARRETT, Attorney General, (WILLIAM C. WINES, and MARY V. NEFF, of counsel,) for appellee.

Mr. JUSTICE MURPHY delivered the opinion of the court:

The questions for determination in this case involve the issues raised in three appeals which have been consolidated for opinion. Cause No. 27779 is as to the liability

of John P. Moriarty, Inc., to make contributions under the Unemployment Compensation Act (Ill. Rev. Stat. 1943, chap. 48, par. 217 *et seq.*) for the year 1937, the second quarter of 1938 and all of 1939. Cause No. 27780 involves the liability of R. E. Doody, M. T. Doody and John P. Moriarty, copartners, doing business as Standard Grading and Construction Company under the same act for the same periods. The question in No. 27781 pertains to the liability of the copartnership for the second quarter of 1941. In June, 1940, the Director of Labor made a determination and assessment against the Moriarty corporation and the copartnership and gave each employer notice of such assessments. Protest notice was filed and a hearing requested. The Director's representative, appointed pursuant to section 25, (paragraph 242) heard evidence and filed a report with the Director which contained findings of facts and a recommendation of assessment the same as fixed by the Director. Each employer filed objections with the Director, which were overruled. The findings and assessments as recommended were confirmed by the Director. In a *certiorari* proceeding in the circuit court of Cook county, the Director's order was confirmed and judgments entered as follows: In No. 27779, against the Moriarty corporation for $513.68, in No. 27780, against the copartnership the Standard Grading and Construction Company for $1485.17, and in No. 27781, against the same copartnership for $280.49. The employers appealed their respective cases to this court. John P. Moriarty, Inc., will be referred to as Moriarty, the Standard Grading and Construction Company as Standard, and the Chatham Paving Company as Chatham.

In defining "employer" paragraph (5) of subsection (e) of section 2 (Ill. Rev. Stat. 1943, chap. 48, par. 218,) provides: "Any employing unit which together with one or more other employing units, is owned or controlled, directly or indirectly, by legally enforceable means or other-

wise, by the same interests, or which owns or controls one or more other employing units directly or indirectly, by legally enforceable means or otherwise, and which if treated as a single unit with such other employing units or interests or both would be an employer under paragraph (1) of this subsection."

The Director's representative found that, in 1937, Chatham had eight or more individuals in employment on some day or portion thereof in each of twenty or more calendar weeks; that neither Moriarty nor Standard had eight if treated as a single unit, but when either was combined with Chatham as a unit, each was liable for contributions, using its own payroll as a basis. Chatham paid contributions for all periods in question and its liability is not involved. It is the unit to which the Director contends Moriarty and Standard should be combined for the purpose of bringing them within the act.

For the year 1938, the representative found Chatham did not have the necessary minimum to bring it within the act but that having contributed in 1937 and not having given the Director notice and obtained his approval on or before January 31, 1938, of its intention to cease to be an employer, it automatically continued for the year 1938 as provided by subsection (b) section 3. Chatham paid in 1938 based on its employment experience of 1937. The representative found that if the employment experience of Moriarty or Standard was combined with Chatham, the total employment experience of either combination treated as a single unit would be less than eight; but he concluded that inasmuch as Moriarty and Standard were liable for contributions for 1937 under the method stated and did not give notice under subsection (b), section 3, their liability continued during the year 1938. However, by computation, the method of which is not clear, the liability of Moriarty and Standard was limited to the second quarter of that year.

In January, 1939, Chatham served notice of withdrawal and the Director accepted it. However, its employment experience for the year was equal to, or in excess of, the minimum and it therefore was within the act and paid contributions based on its payroll. Moriarty and Standard were brought in for that year by combining their respective employments with Chatham as was done in 1937. The assessment against Standard for the second quarter of 1941 was arrived at by the same method as followed in 1939.

It is contended that paragraph (e)(5) of section 2 above quoted is unconstitutional for the following reasons: (a) The act is a taxing statute and should therefore be strictly construed; (b) as a taxing act it lacks uniformity; (c) that it is vague and indefinite, and (d) that, as applied in this case, it deprives these employers of the equal protection of the laws. The opinion in *Zehender and Factor* v. *Murphy*, 386 Ill. 258, was filed after these cases were taken under advisement. All the constitutional questions directed against said subsection in this case were determined in the *Zehender and Factor case* contrary to the contentions now made.

It is also contended that subparagraph (e)(1)(A) of section 2 is unconstitutional. The pertinent parts are that for the years 1937, 1938 and 1939 an employer is "any employing unit which has or had in employment eight or more individuals on some portion of a day, but not necessarily simultaneously, and irrespective of whether the same individuals are or were employed on each such day within each of twenty or more calendar weeks, whether or not such weeks are or were consecutive, within either the current or preceding calendar year."

In illustrating the question raised upon the foregoing provision, it is pointed out that if an employer had eight employees in 1939, (the statutory minimum at that time) and less than the minimum in 1938, he would be within the act in 1939 but not liable for 1938; but that if the

number of employees for the years were reversed, that is, if he had eight or more in 1938 but less than the minimum for 1939, he would be within the act for 1939 by reason of his 1938 employment experience. It is said that the act deprives the employer in the latter illustration of the equal protection of the laws. The fixing of minimum standards by which an employer may be brought within the act is a legislative function. In prescribing such requirements, it is not bound to make the same provision for all employers but may prescribe requirements based upon factual conditions which apply to one group and not to another. So long as the classification rests on a sound basis and applies equally to all within the class it is not subject to constitutional objections. The constitutional objection made against this statute was also directed against paragraph (e)(5) of section 2 in the *Zehender and Factor case* and the principles announced there are controlling here.

The facts are not in dispute. The employers' final contention pertains to the application of the statute to the facts. It is argued that the evidence is insufficient to establish a common ownership and control such as is necessary to bring an employer within the act. Before considering the evidence bearing on the common-control features, reference will be made to the method adopted by the representative in fixing assessments against Moriarty and Standard for the second quarter of 1938. It appears the respective assessments were made on the theory that Moriarty and Standard were employers under the act in 1937 and since they did not give notice to withdraw under subsection (b) section 3, they continued under the act. The material parts of the subsection are that "An employing unit shall cease to be an employer subject to this Act as of the first day of January of any calendar year, only if it files with the Director, prior to the first day of February of such year, a written application for termination of coverage, and the Director finds that the employment experi-

ence of such employer within the preceding calendar year was not sufficient to render an employing unit an employer under the provisions of paragraph (1) of section 2, subsection (e). For the purposes of this subsection, the two or more employing units mentioned in paragraphs (2), (3), (4), or (5) of section 2, subsection (e), shall be treated as a single employing unit." We do not believe the legislature intended that the subsection should be applied to an employer who had never paid contributions or been adjudged by the Director to be under the act. The statute directs that the application for withdrawal, to become effective, shall have the approval of the Director, if he shall find the employment experience of the employer for the preceding year was not sufficient to render him an employer as defined by the act. This requires a finding of fact by the Director but if the employer had not been a contributor in the preceding year, or had not been adjudged liable to make contributions, the Director would have no facts at hand from which he could make such finding. There is no provision in the statute whereby the Director may have a hearing to determine the employer's employment experience for the preceding year and, without such, he cannot make his finding. The statute, if construed to extend to employers who had not contributed in the preceding year or whose liability to contribute had not been fixed by the Director, would be of doubtful validity if it was to be left to the finding of the Director without available information or opportunity for a hearing.

Nor can the assessments for the second quarter of 1938 be sustained on the theory that Chatham was an employer and Moriarty and Standard may be combined with it. It will be noted the representative found that Chatham did not have the minimum employment experience in that year (1938) to be within the act but having failed to withdraw under subsection (b) of section 3, its employment experience of 1937 carried it in automatically. Subsection (b)

of section 3 permits the combining of employment experience of two or more employers if the combination, treated as a unit, would make it an employer under subparagraph (e)(1)(A) of section 2. This latter subparagraph deals exclusively with numbers as a minimum. It is when the combination of the two equals the minimum of subparagraph (e)(1)(A) of section 2, that an employer comes within the act. No provision is made for combining two or more when the total of their employment experience is less than the minimum specified in subparagraph (e)(1)(A) of section 2. Findings 8 and 9 of the representative, that neither Moriarty and Chatham nor Standard and Chatham, treated as a single unit, had eight or more individuals in employment in 1938 on some day or portion thereof in each of twenty or more calendar weeks, establishes conclusively that neither combination, Moriarty and Chatham, nor Standard and Chatham, can be combined under the unified control provision to bring them within the act.

During the year 1937 and prior to December 20, the ownership of the three companies was as follows:

### Moriarty

| | |
|---|---|
| John P. Moriarty | 148 shares |
| Mrs. John P. Moriarty (wife) | 1 share |
| Daniel Kane · | 1 share |

### Standard

| | |
|---|---|
| John P. Moriarty | 50% |
| Richard Doody | 20% |
| Marshall Doody | 30% |

### Chatham

| | |
|---|---|
| John P. Moriarty | 134 shares |
| Marshall Doody | 33 shares |
| Richard Doody | 33 shares |

After December 20, 1937, the ownership of Moriarty and Standard continued the same; but on that date Chatham issued additional stock and John P. Moriarty assigned a part of his previous holdings to Marion F. Mo-

riarty, his wife, so that after the issuance of the additional shares and the transfer, the stock was held as follows: Marion F. Moriarty 300 shares, John P. Moriarty 1 share, Marshall Doody 75 and Richard Doody 74.

Moriarty was engaged as an excavating contractor, Standard as a building contractor constructing dwelling houses, and Chatham as a paving contractor and road builder. Each of the companies had separate addresses, telephones, office premises, office equipment, records, bank accounts, delivery trucks; all licenses were issued in their respective names, each filed separate income tax returns, social security returns and each had its separate compensation insurance. Each purchased its own supplies, owned its own equipment and paid its own employees from its own bank account. The checks of Moriarty were signed by John P. Moriarty or his wife; checks issued by Standard were signed by Richard Doody and those issued by Chatham were signed by Moriarty or Marshall Doody. Marshall Doody kept the books for the three companies but he received no pay for what he did for Moriarty. The employees were always paid by the company for whom they rendered service. At times laborers were transferred from one company to another but they never worked for two companies on the same day and, even though they were transferred, they were paid by the companies for which the labor was performed.

John P. Moriarty was president and treasurer of Moriarty. He, Marion F. Moriarty and Daniel Kane constituted the board of directors. Mrs. Moriarty had been employed in the office in 1934 and 1935 and was familiar with the business affairs of the company. The extent of her activities in such affairs during the periods in question is not shown. Neither of the Doodys had any interest in Moriarty and exercised no voice in its management.

Standard was under the supervision of John P. Moriarty and the two Doodys. Any one of them had au-

thority to employ and discharge employees. They had regular accountings of the profits and losses and each participated in proportion to his interest in the distribution of any profits.

The board of directors of Chatham consisted of John P. Moriarty, president, Marion F. Moriarty and Marshall Doody. Mrs. Moriarty attended and participated in the semiannual meetings of the stockholders. If she did more than attend the stockholders' meetings the same is not shown by the evidence. John P. Moriarty and each of the Doodys drew salaries from Chatham.

The Director argues that an inference of intent to evade the act may be drawn from the circumstances surrounding the transfer of the Chatham stock from John P. Moriarty to his wife. The only evidence in regard to the transfer is the testimony of John P. Moriarty, in which he stated that he gave the stock to his wife, that he reported the same and paid the Federal gift tax due thereon. The record is silent as to any other circumstances surrounding the gift and without more proof there is no basis for an implication of bad faith in the stock transfer.

The representative found that John P. Moriarty owned 99 per cent of the stock of Moriarty, and at the same time owned approximately two thirds of the Chatham stock, and from this fact he concluded that "By virtue of owning the majority stock in each of the aforementioned corporations, John P. Moriarty was in a position to legally and effectively control the policies of both by appointing and removing members of the board of directors of each corporation as he saw fit. Plainly, therefore, the petitioner, John P. Moriarty, Inc., and the aforementioned Chatham Paving Company, a corporation, were controlled by the same interests, namely: John P. Moriarty."

The determination and assessments made by the Director are *prima facie* correct. (Section 25(a)(1).) On *certiorari* the court has the power to review all questions of

law and fact presented by the record, (section 25(a)(2),) and unless the findings of fact are against the manifest weight of the evidence the same should be taken as final.

Paragraph (e)(5) of section 2 prescribes the factors by which two employing units may be united and treated as a single unit. It states that if they are owned or controlled by the same interests they may be combined. The findings of the Director indicate that he concluded the disjunctive "or" authorized combining the two units if ownership amounting to a controlling interest in the two units was present regardless of an actual control of the two as one unit. In construing statutes, the object is to determine the legislative intent, and in ascertaining the intent, it is proper to look into the purpose for which the statute was enacted. The obvious purpose for which paragraph (e)(5) of section 2 was placed in the act was to prevent circumvention of the law by dividing a business, having the required employment experience to bring it within the act, into smaller units each having less than the minimum requirements. If such was the purpose it should reach something more than a common ownership of interest. It is possible that one person could have a majority interest into two employing units and yet exercise no control in the election of directors, the formation of policies or conduct of the business. If such employing units were under separate control, it could hardly be contended that it was the intent of the legislature that the employment experience of two unrelated concerns, except for the common ownership feature, should be united and treated as one.

It is the settled law of this State that the words "or" and "and" will not be given their literal meaning when to do so renders the sense of a statutory enactment dubious. The strict meaning of such words is more readily departed from than that of other words. Where it is necessary to effectuate the intention of the legislature, the word "or" is sometimes considered to mean "and," and the word

"and" to mean "or." *Ayers* v. *Chicago Title and Trust Co.* 187 Ill. 42; *Boyles* v. *McMurphy,* 55 Ill. 236.

Counsel have cited many cases from other jurisdictions where a statutory provision similar to one involved here was construed. The conclusions as to the meaning of such statute are not in harmony. Some may be distinguished by reason of the difference in the wording of the statute and others by the fact that the ownership and control were assumed to be proved. For analysis of such cases see annotation in 142 A. L. R. 927. We agree with the conclusion reached by the Supreme Court of Missouri in *Kellogg* v. *Murphy,* 349 Mo. 1165, 164 S. W. 2d 285. The affiliate clause construed in that case is identical with the one in this State. It was said: "And so we conclude that although subsection (h) 4 [affiliate clause] in terms declares two or more separate employing units shall be treated as a single unit if mainly owned *or* controlled by the same interests, yet the ownership mentioned is not of itself the test but is intended to be merely evidentiary of actual common control."

The findings of the Director pertain to the ownership of the three units. There is no finding of fact as to actual joint control of Moriarty and Chatham or Standard and Chatham,—joint control that evidences a unification in the management and formation of policies of each employer. The ownership of the stock has evidentiary value in determining whether unification of control is present but it does not, standing alone, furnish a basis for combining the employment experience of two employers so that they may be considered as a single unit. In considering such matter, the character of the business in which each employer is engaged, the relation of one to the other, their respective locations, the ownership of interests and the management of the business of each are factors to be given consideration. The findings in that regard do not sustain the assessments.

Section 25 (a)(2) (par. 242) directs that in cases of this character the court on *certiorari* may confirm or set aside the decision of the Director and if the decision is set aside and the facts appearing in the record are sufficient, the court may enter such decision as is justified by law, or may remand the cause to the Director for further proceedings and may state the questions requiring further hearing and such other proceedings as may be proper.

The judgments in all three cases are reversed and the causes are remanded to the circuit court of Cook county. Pursuant to section 25(a)(2) the court shall refer each case to the Director with directions to proceed in accordance with the views expressed herein. The directions should be limited to the periods for which assessments were made in 1937, 1939 and 1941. There is no basis for liability to make contributions for the second quarter of 1938.

*Reversed and remanded, with directions.*