Docket No. 105395.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE COUNTY OF DU PAGE *et al.*, Appellees, v. THE ILLINOIS LABOR RELATIONS BOARD *et al.*, Appellants.

*Opinion filed December 18, 2008.*

CHIEF JUSTICE FITZGERALD delivered the judgment of the court, with opinion.

Justices Freeman, Kilbride and Burke concurred in the judgment and opinion.

Justice Thomas concurred in part and dissented in part, with opinion, joined by Justices Garman and Karmeier.

## OPINION

The Illinois Labor Relations Board, State Panel (the Board), and the Metropolitan Alliance of Police, Du Page County Sheriff's Police Chapter #126 (MAP or the Union) appeal from a judgment of the appellate court vacating the Board's certification of MAP as the exclusive bargaining representative for a unit of deputy sheriffs employed by the County of Du Page and the sheriff of Du Page County (collectively, the Employer) (375 Ill. App. 3d 765). At issue is the proper interpretation of section 9(a–5) of the Illinois Public Labor Relations Act (5 ILCS 315/9(a–5) (West 2004)).

For the reasons discussed below, we reverse the judgment of the appellate court, and remand to the appellate court for further review.

BACKGROUND

The Illinois Public Labor Relations Act (the Act) grants public employees "full freedom of association, self-organization, and designation of representatives of their own choosing for the purposes of negotiating wages, hours and other conditions of employment." 5 ILCS 315/2 (West 2004). Prior to the adoption of section 9(a–5) of the Act (see Pub. Act 93–444, eff. August 5, 2003), unless a public employee was a member of a historically recognized bargaining unit, or the public employer voluntarily recognized a labor organization as the exclusive bargaining representative for a unit of employees, the only means available for public employees to exercise their collective-bargaining rights was through a secret ballot election. See 5 ILCS 315/3(f), 9(d), (f) (West 2002). When the legislature enacted section 9(a–5), it provided public employees and labor organizations an alternative to the election process. Section 9(a–5) states:

> "The [Illinois Labor Relations] Board shall designate an exclusive representative for purposes of collective bargaining when the representative demonstrates a showing of majority interest by employees in the unit. If the parties to a dispute are without agreement on the means to ascertain the choice, if any, of employee organization as their representative, the Board shall ascertain the employees' choice of employee organization, on the basis of *dues deduction authorization and other evidence*, or, if necessary, by conducting an election. If either party provides to the Board, before the designation of a representative, clear and convincing evidence that the dues deduction authorizations, and other evidence upon which the Board would otherwise rely to ascertain the employees' choice of representative, are fraudulent or were obtained through coercion, the Board shall promptly thereafter conduct an election. The Board shall also investigate and consider a party's allegations that the dues deduction authorizations and other evidence submitted in support of a designation of representative without an election were subsequently changed, altered, withdrawn, or withheld

-2-

as a result of employer fraud, coercion, or any other unfair labor practice by the employer. If the Board determines that a labor organization would have had a majority interest but for an employer's fraud, coercion, or unfair labor practice, it shall designate the labor organization as an exclusive representative without conducting an election." (Emphasis added.) 5 ILCS 315/9(a–5) (West 2004).

A union seeking to be certified under section 9(a–5) must file with the Board a "majority interest petition," *i.e.*, a representation petition "accompanied by a showing of interest evidencing that a majority of the employees in the petitioned-for bargaining unit wish to be represented by the labor organization." 80 Ill. Adm. Code §1210.80(b) (as amended at 28 Ill. Reg. 4172, eff. February 19, 2004). Under the Board's rules, the showing of interest in support of such a petition "may consist of *authorization cards, petitions, or any other evidence* that demonstrates that a majority of the employees wish to be represented by the union for the purposes of collective bargaining." (Emphasis added.) 80 Ill. Adm. Code §1210.80(d)(2)(A) (as amended at 28 Ill. Reg. 4172, eff. February 19, 2004). The evidence of majority support must contain original, legible, signatures, which do not predate the filing of the petition by more than six months. 80 Ill. Adm. Code §§1210.80(d)(2)(B), (d)(2)(C), (d)(2)(D) (as amended at 28 Ill. Reg. 4172, eff. February 19, 2004). In addition, the showing of interest "shall state that by signing the card the employee acknowledges that if a majority of his/her co-workers in an appropriate unit sign evidence of majority support, the card can be used by the petitioner to obtain certification as the employees' exclusive representative without an election." 80 Ill. Adm. Code §1210.80(d)(2)(E) (as amended at 28 Ill. Reg. 4172, eff. February 19, 2004). Evidence of majority support is not furnished to any of the parties. 80 Ill. Adm. Code §1210.80(e)(1) (as amended at 28 Ill. Reg. 4172, eff. February 19, 2004).

The employer is required to submit signature exemplars for the employees in the proposed bargaining unit and is permitted an opportunity to respond to the petition. 80 Ill. Adm. Code §1210.100(b)(2), (b)(3) (as amended at 28 Ill. Reg. 4172, eff. February 19, 2004). In addition to providing "clear and convincing evidence of any alleged fraud or coercion in obtaining majority

-3-

support," the employer must set forth its "position with respect to the matters asserted in the petition, including, but not limited to, the appropriateness of the bargaining unit and, to the extent known, whether any employees sought by petitioner to be included should be excluded from the unit." 80 Ill. Adm. Code §1210.100(b)(3) (as amended at 28 Ill. Reg. 4172, eff. February 19, 2004). "Any person aggrieved" by an order of the Board certifying a labor organization "may apply for and obtain judicial review in accordance with provisions of the Administrative Review Law *** directly in the Appellate Court for the district in which the aggrieved party resides or transacts business." 5 ILCS 315/9(i) (West 2004).

The present legal dispute arose out of a majority interest petition filed by MAP on June 15, 2005, in case number S–RC–05–153, in which MAP sought to be certified as the exclusive representative for a unit of Du Page County deputy sheriffs. The Employer objected to the petition on several grounds. One of its objections, relevant here, stemmed from the difference between the statutory language and the Board's rules. As set forth above, section 9(a–5) of the Act requires the Board to ascertain the employees' choice of representative "on the basis of dues deduction authorization *and* other evidence," whereas the Board's rules require "authorization cards, petitions, *or* any other evidence" demonstrating a majority interest. (Emphases added.) Compare 5 ILCS 315/9(a–5) (West 2004) with 80 Ill. Adm. Code §1210.80(d)(2)(A) (as amended at 28 Ill. Reg. 4172, eff. February 19, 2004). The Employer argued that section 9(a–5) required the Union to submit both dues deduction authorization evidence and some other evidence of majority support, and that the Board's rules to the contrary were invalid. The Employer also argued that it was entitled to copies of the Union's evidence and that the requested bargaining unit was inappropriate.

The Board rejected the Employer's arguments and, on March 23, 2006, certified MAP as the exclusive bargaining representative for the requested employee unit. The Board's tally indicated that 189 employees were in the unit; 111 valid cards were signed in support of MAP; no cards were found, or even alleged, to have been obtained through the use of fraud or coercion; and 14 cards were found invalid for other reasons (*e.g.*, the employee was not included in the unit, or the card was not signed or dated).

The Employer sought administrative review of the Board's decision, arguing that the word "and," as used in the statutory phrase "dues deduction authorization and other evidence" (5 ILCS 315/9(a–5) (West 2004)), should be read in its conjunctive sense, and that the Board's rules contradict the statute and are therefore invalid. The Employer also argued that the Board likely applied the invalid regulations and did not require the Union to supply both dues deduction authorization and other evidence in support of its petition. The Employer also renewed its challenge to the makeup of the bargaining unit.

The Board and the Union disagreed with the Employer's construction of section 9(a–5) and argued that the word "and," when construed in light of the entire section, should be read in its several, disjunctive sense. The Board and the Union also argued that the underlying evidence supporting a majority interest petition is confidential and that the employer does not have a right to review it. Finally, the Board and the Union maintained that the bargaining unit is appropriate.

While the case was being briefed in the appellate court, the Employer filed a motion seeking to have the record supplemented with the Union's evidence of majority support. The Board objected, and the appellate court denied the Employer's motion. Thus, the evidence of majority support was not made a part of the record on review.

The appellate court vacated the Board's decision and remanded the matter to the Board for further proceedings. 375 Ill. App. 3d 765. The appellate court determined that both constructions of section 9(a–5) advanced by the parties were reasonable and that the statute was therefore ambiguous. 375 Ill. App. 3d at 773-74. Ultimately, however, the appellate court agreed with the Employer: "[T]he majority interest provision requires that both dues deduction authorization and other evidence be submitted demonstrating that a majority of the employees support representation by the named organization." 375 Ill. App . 3d at 776. The appellate court also held that because the Board's regulations only require one form of evidence to support a majority interest showing, and do not require dues deduction authorization evidence, the Board's regulations conflict with the requirements of section 9(a–5) and, therefore, are

invalid. 375 Ill. App. 3d at 777. The appellate court further held that the Board's decision on a majority interest petition is a final order, expressly subject to administrative review, and that meaningful review requires, at a minimum, that the reviewing court be able to ascertain that the evidence submitted to the Board was "the type and amount" sufficient to demonstrate a showing of interest by a majority of the eligible employees. 375 Ill. App. 3d at 777-78. The appellate court noted that there was no evidence of record to support the Board's decision, and inferred that MAP submitted evidence in conformance with the Board's invalid regulations, rather than the requirements of section 9(a–5). Accordingly, the appellate court held that the Board's decision certifying MAP was against the manifest weight of the evidence. 375 Ill. App. 3d at 778-79.

The appellate court also concluded that no reason existed to prohibit the Employer from reviewing the Union's evidence of majority interest, where the employees' identities are redacted. "Further, because the majority interest petition stands in lieu of an election, and to allow the meaningful review of the Board's decision, the Board must adopt some sort of regulation that provides for the submission of the evidence it relied upon to the reviewing court ***." 375 Ill. App. 3d at 779. The appellate court found it unnecessary to address the Employer's contention regarding the makeup of the bargaining unit. 375 Ill. App. 3d at 779.

After entry of the appellate court opinion, the Employer filed a petition in the appellate court, pursuant to section 10–55(c) of the Illinois Administrative Procedure Act (5 ILCS 100/10–55(c) (West 2006)), seeking attorney fees of $47,254.50. While the fee petition was pending, the Board filed its petition for leave to appeal with this court, which we allowed. See 210 Ill. 2d R. 315. Shortly thereafter, the appellate court granted the fee petition.

We allowed the Union, as an additional appellant in this court, to adopt the Board's briefs as its own. We also granted leave to the Illinois State Federation of Labor; Chicago Federation of Labor; American Federation of State, County & Municipal Employees, Council 31; Illinois Federation of Teachers; Services Employees International Union, Local 73, CTW, CLS; Associated Firefighters of Illinois; and Illinois Educational Association to file an *amicus curiae* brief in support of the Board and MAP. Finally, we granted leave to

the Illinois Public Employer Labor Relations Association and Illinois Municipal League to file an *amicus curiae* brief in support of the Employer.

ANALYSIS

The Board identifies the following issues for review: (1) whether section 9(a–5) requires both dues deduction authorization evidence and another form of evidence in support of a majority interest petition; (2) whether an employer is entitled to review the evidence of majority support; (3) whether this court should consider the bargaining unit issues not addressed by the appellate court and, if so, how it should rule; and (4) whether the appellate court properly awarded the full amount of attorney fees requested by the Employer. We consider each in turn.

I. "Dues deduction authorization and other evidence"

The first issue raised by the Board is one of statutory interpretation, which is subject to *de novo* review. *Harrisonville Telephone Co. v. Illinois Commerce Comm'n*, 212 Ill. 2d 237, 247 (2004). Our primary objective is to ascertain and give effect to the intent of the legislature. *Harrisonville Telephone Co.*, 212 Ill. 2d at 251; *Alternate Fuels, Inc. v. Director of the Illinois Environmental Protection Agency*, 215 Ill. 2d 219, 237-38 (2004). The most reliable indicator of such intent is the language of the statute, which is to be given its plain and ordinary meaning. *Harrisonville Telephone Co.*, 212 Ill. 2d at 251; *Alternate Fuels*, 215 Ill. 2d at 238. Words and phrases should not be considered in isolation; rather, they must be interpreted in light of other relevant provisions and the statute as a whole. *Williams v. Staples*, 208 Ill. 2d 480, 487 (2004); *In re Detention of Lieberman*, 201 Ill. 2d 300, 308 (2002). In addition to the statutory language, the court may consider the purpose behind the law and the evils sought to be remedied, as well as the consequences that would result from construing the law one way or the other. *Williams*, 208 Ill. 2d at 487; *Lieberman*, 201 Ill. 2d at 308. Where a statute is capable of more than one reasonable interpretation, the statute will be deemed ambiguous. *General Motors Corp. v. State of Illinois Motor Vehicle Review Board*, 224 Ill. 2d 1, 13 (2007). In that

event, the court may consider extrinsic aids to construction, such as legislative history. *People v. Collins*, 214 Ill. 2d 206, 214 (2005)

For ease of discussion, we repeat a portion of section 9(a–5):

> "If the parties to a dispute are without agreement on the means to ascertain the choice, if any, of employee organization as their representative, the Board shall ascertain the employees' choice of employee organization, on the basis of dues deduction authorization and other evidence, or, if necessary, by conducting an election. If either party provides to the Board, before the designation of a representative, clear and convincing evidence that the dues deduction authorizations, and other evidence upon which the Board would otherwise rely to ascertain the employees' choice of representative, are fraudulent or were obtained through coercion, the Board shall promptly thereafter conduct an election." 5 ILCS 315/9(a–5) (West 2004).

The Board argues that the word "and," as used in the phrase "dues deduction authorization and other evidence," when considered in the context of section 9(a–5) as a whole, should be read in the disjunctive. Under this reading, "dues deduction authorization and other evidence" establishes a range or category of evidence which will support a majority interest petition, but it does not require that the petition be supported by all such evidence. Rather, dues deduction authorization *or* other evidence, similar in kind to dues deduction authorizations, is sufficient. This interpretation is reflected in the Board's rules, which state in relevant part: "The showing of interest in support of a majority interest petition may consist of authorization cards, petitions, *or* any other evidence that demonstrates that a majority of the employees wish to be represented by the union for the purposes of collective bargaining." (Emphasis added.) 80 Ill. Adm. Code §1210.80(d)(2)(A) (as amended at 28 Ill. Reg. 4172, eff. February 19, 2004).

The Board also posits that reading "and" as "or" avoids creating an internal inconsistency in the statute. The Board explains that, if, in the second sentence quoted above, the Board could "otherwise" rely on "other evidence" to ascertain the employees' choice of representative, then the phrase "dues deduction authorization and

other evidence" in the first sentence cannot require both forms of evidence.

The Employer argues that "and" typically "signifies and expresses the relation of addition" (*People v. A Parcel of Property Commonly Known as 1945 North 31st Street, Decatur, Macon County, Illinois*, 217 Ill. 2d 481, 501 (2005)), and thus is generally read in the conjunctive. The Employer disputes that reading "and" in this fashion creates an inconsistency in the statute, and adopts the reasoning of the appellate court that the term "otherwise," when given its ordinary meaning, can be reconciled with reading "and" in the conjunctive. See 375 Ill. App. 3d at 775.

In evaluating the parties' divergent interpretations, we note that use of the word "and" between two statutory elements generally indicates that both of the elements must be satisfied in order to comply with the statute. *People v. A Parcel of Property Commonly Known as 1945 North 31st Street, Decatur, Macon County, Illinois*, 217 Ill. 2d 481, 501 (2005); *Jarvis v. South Oak Dodge, Inc.*, 201 Ill. 2d 81, 87-88 (2002). Nonetheless, this court has also recognized that "and" is often used interchangeably with "or," the meaning being determined by the context. *Sturgeon Bay, Etc. Ship Canal & Harbor Co. v. Leatham*, 164 Ill. 239, 243 (1896). Webster's dictionary reflects this use of "and," providing the following secondary definition:

> "2–used as a function word to express *** reference to either or both of two alternatives ‹choose between him~me› esp. in legal language when also plainly intended to mean *or* ‹bequeathed to a person~her bodily issue› ‹property taxable for state~county purposes›." (Emphasis in original.) Webster's Third New International Dictionary 80 (1993).

See also Black's Law Dictionary 86 (6th ed. 1990) (stating that "and" is "[s]ometimes construed as 'or' ").

In construing statutes, the strict meaning of words like "and" "is more readily departed from than that of other words." *John P. Moriarty, Inc. v. Murphy*, 387 Ill. 119, 129 (1944). Thus, if reading "and" in its literal sense would create an inconsistency in the statute or "render[ ] the sense of a statutory enactment dubious," we will read "and" as "or." *John P. Moriarty, Inc.*, 387 Ill. at 129-30; accord *1945*

*North 31st Street*, 217 Ill. 2d at 500-01; *People ex rel. Department of Registration & Education v. D.R.G., Inc.*, 62 Ill. 2d 401, 405 (1976).

We conclude that the basic premise underlying the Board's reading of the statute–that "and" does not necessarily mean "and"–and the basic premise underlying the Employer's reading of the statute–that "and" typically means "and"–both appear, at first blush, to be on solid ground. We conclude also that both interpretations can be harmonized, to a greater or lesser degree, with section 9(a–5) as a whole, including the "otherwise" clause. Accordingly, because section 9(a–5) is " 'capable of being understood by reasonably well-informed persons in two or more different senses,' " we deem the statute ambiguous. *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 511 (2007), quoting *People v. Jameson*, 162 Ill. 2d 282, 288 (1994).

To resolve this ambiguity, we turn to the legislative history of section 9(a–5), which began its life as House Bill 3396. We find instructive the statements of Senator Martin Sandoval, who spoke in support of this bill:

> "Under current law, workers must go through a difficult process to form a union. Workers must first sign union authorization cards stating that they want a union. Then, even though they've already said they want a union, they must file for a *** Labor Board-run election. The election process can be lengthy and cumbersome, as we all know, during which time the employer has control of the employers [*sic*] and can interfere with the employees' decision. And, in fact, employers routinely use this time to scare workers into voting against a union even if the workers want a union. Solution to this problem for public employees is to allow them *** to vote for a union through a process called card check." 93d Ill. Gen. Assem., Senate Proceedings, May 21, 2003, at 12 (statements of Senator Sandoval).

The senator's statements indicate that the legislature intended, through its adoption of House Bill 3396, to provide an alternative to the "lengthy and cumbersome" statutory election procedure, namely, a simple "card check" procedure. We therefore cannot agree with the Employer that the legislature would have complicated the card check

procedure by requiring two forms of evidence: a dues checkoff card and some other unspecified form of evidence.

Support for this conclusion is also found in the statements of Representative Larry McKeon:

> "House Bill 3396 is modeled after a piece of legislation in New York that simplifies the manner in which elections may be held to certify a collective bargaining agent \*\*\*." 93d Ill. Gen. Assem., House Proceedings, March 31, 2003, at 50 (statements of Representative McKeon).

The New York legislation to which Representative McKeon referred is section 207 of New York's Public Employees' Fair Employment Act. The New York statute requires that for purposes of resolving disputes concerning representation status, the public employees' choice of representative shall be ascertained "on the basis of dues deduction authorization *and* other evidences." (Emphasis added.) N.Y. Civ. Serv. §207 (Consol. 2008). To implement the statute, New York's labor board adopted rules requiring a majority of the employees to indicate their choice of representative "by the execution of dues deduction authorization cards which are current *or* individual designation cards." (Emphasis added.) N.Y. Comp. Codes R. & Regs. tit. 4, §201.9(g)(1) (2008). We presume that our legislature, having modeled House Bill 3396 on the New York statute, was also aware of the corresponding administrative regulations, which were then in effect. Having adopted language that mirrors in pertinent part the language of the New York statute, we also presume that the legislature intended a similar result. The Board's reading of section 9(a–5), as reflected in its regulations, achieves that result.

To the extent, however, that the legislative history fails to completely resolve any doubt as to the legislature's intent, we are guided by the principle that courts afford considerable deference to the interpretation of an ambiguous statute by the agency charged with its administration. *Lauer v. American Family Life Insurance Co.*, 199 Ill. 2d 384, 388 (2002); *Phoenix Bond & Indemnity Co. v. Pappas*, 194 Ill. 2d 99, 106 (2000). The reason for this deference is that the "agency can make informed judgments upon the issues, based on its experience and expertise." *Bonoguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 398 (1994), citing *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 97-98 (1992);

see also *Andrews v. Kowa Printing Corp.*, 217 Ill. 2d 101, 116 (2005) ("the interpretation of a statute by involved administrative bodies constitutes 'an informed source for guidance when seeking to ascertain the legislature's intention when the statute was enacted' "), quoting *Johnson v. Marshall Field & Co.*, 57 Ill. 2d 272, 278 (1974). For this additional reason, we would adopt the construction urged by the Board.

We hold that the word "and," as used in the phrase "dues deduction authorization and other evidence," was intended by the legislature to mean "or." The appellate court therefore erred in holding section 1210.80(d)(2)(A) of the Board's regulations, which do not require dues deduction authorization evidence, invalid. See 375 Ill. App. 3d at 777.

The appellate court also erred when it held that the Board's decision certifying the union was against the manifest weight of the evidence. See 375 Ill. App. 3d at 778-79. That holding was based on the failure of the Board to require, and the presumed failure of the Union to submit, dues deduction authorization evidence. Because the statute does not require such evidence, the appellate court erred in vacating the Board's decision.

## II. Employer Review of Majority Interest Evidence

The Board next argues that, contrary to the appellate court opinion, an employer is not entitled to review a union's evidence of majority support. We review this legal issue, which devolves into an issue of statutory construction, *de novo*. *Harrisonville Telephone Co.*, 212 Ill. 2d at 247.

The Board's rules state that "[t]he Board shall maintain the confidentiality of the showing of interest," and that such evidence "shall not be furnished to any of the parties." 80 Ill. Adm. Code §1210.80(e)(1) (as amended at 28 Ill. Reg. 4172, eff. February 19, 2004). The Board argues that if the confidentiality of the evidence of majority support is not preserved, the basic purposes of the Act will be undermined. Relying upon federal case law analyzing the National Labor Relations Act (29 U.S.C. §151 *et seq.*), the Board contends that "employees have a strong privacy interest in their personal sentiments regarding union representation, and that this right to privacy is a right

necessary to full and free exercise of the[ir] organizational rights" under the Act. *Pacific Molasses Co. v. National Labor Relations Board Regional Office #15*, 577 F.2d 1172, 1182 (5th Cir. 1978). According to the Board, disclosure of authorization cards, which identify the signers, would chill the right of employees to express their union sentiments. *Pacific Molasses*, 577 F.2d at 1182; *Committee on Masonic Homes of R.W. Grand Lodge v. National Labor Relations Board*, 556 F.2d 214, 221 (3d Cir. 1977). The Board notes that even the attempted discovery of union authorization cards by an employer has been deemed an "illegal objective" by the federal court of appeals. *Wright Electric, Inc. v. National Labor Relations Board*, 200 F.3d 1162, 1167 (8th Cir. 2000).

The Employer responds that majority interest evidence need not always be deemed confidential. In support, the Employer cites three decisions from the National Labor Relations Board (NLRB) involving unfair labor practice charges against the employers. See *Raley's*, 337 N.L.R.B. 719 (2002); *American Beef Packers, Inc.*, 187 N.L.R.B. 996 (1971); *Stoner Rubber Co.*, 123 N.L.R.B. 1440 (1959). We have reviewed these decisions and find them inapposite.

In *Raley's*, the NLRB affirmed the dismissal of a complaint alleging that the employer unlawfully refused to recognize and bargain with the union as the majority representative at two of the employer's stores. After the General Counsel unsuccessfully sought to have the matter of majority status submitted to a neutral third party, the union refused to produce the authorization cards necessary to establish majority status, and the complaint was dismissed. *Raley's*, 337 N.L.R.B. 719. In *American Beef Packers*, the NLRB dismissed a complaint alleging that the employer improperly engaged in collective bargaining at a time when the union did not represent a majority of the employees. The dismissal was based on the failure of the NLRB's General Counsel to come forward with evidence establishing the number of authorization cards and the number of employees in the unit at the time in question. *American Meat Packers*, 187 N.L.R.B. at 997. Finally, in *Stoner Rubber* the NLRB dismissed a complaint alleging the employer unlawfully refused to bargain with the union because the General Counsel failed to produce evidence of majority interest, other than the union's certification order entered 14 months earlier. The NLRB noted that "[p]roof of

-13-

majority is peculiarly within the special competence of the union" and "may be proved by signed authorization cards, dues checkoff cards, membership lists, or any other evidentiary means." *Stoner Rubber*, 123 N.L.R.B. at 1445.

At most, the foregoing decisions suggest that where an employer is subject to a charge of an unfair labor practice, the need to establish whether the union did or did not enjoy majority status may result in the authorization cards or other evidence of majority support being made part of the evidentiary record before the finder of fact. These decisions do not, however, indicate that an employer must be allowed access to the union's evidence of majority interest where, as here, the evidence has been submitted to, and reviewed by, the body charged with administration of the labor act. Rather, we agree with the Board that preserving the confidentiality of the authorization cards and other evidence of majority support is consistent with the public employees' statutory right to full freedom of association, self-organization and union representation (5 ILCS 315/2 (West 2004)), and that disclosure of such evidence to the employer would chill the exercise of these statutory rights.

As the Employer notes, however, the appellate court attempted to address the Board's confidentiality concerns. The appellate court stated:

"We note that respondents [the Board and the Union] raise concerns over breaching the anonymity protections of the employees who might be seeking to organize union representation, and the chilling effect on unionization that review of the majority interest petition might entail. We note further, however, that petitioners [the Employer] appear to be sensitive to such concerns and have requested only that they be allowed to review such redacted evidence that demonstrates majority interest on the part of the eligible deputies while maintaining the anonymity of the deputies. We certainly see no problems in providing for some sort of review of the redacted evidence in support of a majority interest petition. Further, because the majority interest petition stands in lieu of an election, and to allow the meaningful review of the Board's decision, the Board must adopt some sort of regulation that provides for the submission of the evidence it

-14-

relied upon to the reviewing court and follows the mandates of section 9(a–5). We imagine that the submission of redacted dues authorization cards and other evidence will both preserve the employees' anonymity and allow the employer to have the same rights of review as provided in section 9(a) regarding the secret ballot election of a representative." 375 Ill. App. 3d at 779.

The Board questions the value of submitting redacted authorization cards. The Board notes that if all of the identifying information is redacted (name, signature, address, social security number, work unit), only the original preprinted card remains. Whatever the benefits, or burdens, in submitting redacted copies of the evidence of majority support, the submission of redacted evidence at least appears to address the confidentiality concerns raised by the Board.

The Board's disagreement with the appellate court opinion, however, goes beyond issues of confidentiality. The Board also disagrees with the appellate court's rationale for allowing an employer access to the evidence of majority support. The appellate court reasoned as follows. The Board's certification order is a final administrative decision and therefore subject to review by the appellate court under section 9(i) of the Act (5 ILCS 315/9(i) (West 2004)). Review must be meaningful, *i.e.*, the court must be able to ascertain that the union's evidence was the type and amount sufficient to demonstrate majority support. Therefore, the evidence of support must be submitted to the reviewing court and to the employer. 375 Ill. App 3d at 777-79.

The Board argues that the appellate court's reasoning overlooks that the Act limits an employer's role in the determination of majority interest, and that except in narrow circumstances not present here, the Board's majority interest determination is not litigable. See 80 Ill. Adm. Code §1210.80(e)(3) (as amended at 28 Ill. Reg. 4172, eff. February 19, 2004) (providing that the showing of interest shall be determined administratively by the Board and is not subject to litigation, except for cases of fraud or coercion). We understand the Board's argument to be this. If, under the Act, an employer may not challenge the Board's determination of majority status, then this is not an issue that could be raised before the Board and not an issue

-15-

that could be raised on administrative review. Therefore, no need exists to submit copies of the evidence of majority support (redacted or otherwise) to the employer. In evaluating this argument, we return to the language of the Act.

Section 9(a–5) mandates that "[t]he Board shall designate an exclusive representative for purposes of collective bargaining when the representative demonstrates a showing of majority interest by employees in the unit." 5 ILCS 315/9(a–5) (West 2004). Significantly, the legislature provided for minimal involvement by the employer in this procedure. Section 9(a–5) states: "If either party provides to the Board, before the designation of a representative, clear and convincing evidence that the dues deduction authorizations, and other evidence *** are fraudulent or were obtained through coercion, the Board shall promptly thereafter conduct an election." 5 ILCS 315/9(a–5) (West 2004). The legislature made no other provision for the employer to involve itself in the process by which the union seeks certification under section 9(a–5), or the process by which the Board determines whether a union has established majority support under section 9(a–5). We will not assume that the legislature intended a larger role for the employer than the language of section 9(a–5) allows. See *In re Ryan B.*, 212 Ill. 2d 226, 234 (2004) (courts may not restrict or enlarge the meaning of an unambiguous statute). We thus agree with the Board that its determination of whether a union enjoys majority support may not be litigated.

This conclusion finds support in the fact that, at the time the legislature adopted section 9(a–5), the Board's rules provided that the showing of interest under section 9(a) would be determined administratively by the Board and would not be subject to litigation. 80 Ill. Adm. Code §1210.80(d)(3) (as amended at 27 Ill. Reg. 7393, eff. May 1, 2003). See also *County of Kane v. Illinois State Labor Relations Board*, 165 Ill. App. 3d 614, 620 (1988) (holding that section 9(a) showing of interest is not litigable). If the legislature desired a different result when it adopted section 9(a–5), it could have included appropriate language in the statute. It did not do so.

To the extent section 9(a–5) could be considered ambiguous and the legislature's intent in doubt, we would defer to the Board's reasonable construction of the statute. See *Lauer*, 199 Ill. 2d at 388; *Phoenix Bond & Indemnity Co.*, 194 Ill. 2d at 106. The Board's

construction, which limits the employer's ability to challenge a finding of majority support, is consistent with the legislative history, set forth in section I *supra*, demonstrating that the General Assembly intended section 9(a–5) to limit an employer's ability to delay or interfere in the process of union recognition. See 93d Ill. Gen. Assem., Senate Proceedings, May 21, 2003, at 12 (statements of Senator Sandoval). The legislature would not have provided a streamlined "card check" procedure for union recognition on the one hand, but on the other hand provide an employer the ability to delay a certification order by allowing a fishing expedition in the union's evidence of support.

We are not persuaded by the Employer's argument that, under section 9(i) of the Act, *all* aspects of a certification order, including the sufficiency of the evidence of majority support, are litigable. Section 9(i) states in pertinent part:

> "An order of the Board *** determining and certifying that a labor organization has been fairly and freely chosen by a majority of employees in an appropriate bargaining unit, *** is a final order. Any person aggrieved by any such order *** may apply for and obtain judicial review in accordance with the provisions of the Administrative Review Law, *** except that such review shall be afforded directly in the Appellate Court for the district in which the aggrieved party resides or transacts business." 5 ILCS 315/9(i) (West 2004).

Section 9(i) addresses who may appeal a certification order. It does not address the separate issue of reviewability, *i.e.*, the scope of review. See *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 496 (1988), quoting 2 C. Koch, Administrative Law & Practice §9.1, at 84 (1985) ("reviewability sets out the area of review").

The Employer's reliance on *Champaign-Urbana Public Health District v. Illinois Labor Relations Board, State Panel*, 354 Ill. App. 3d 482, 486 (2004), and *County of Du Page v. Illinois Labor Relations Board, State Panel*, 358 Ill. App. 3d 174, 179 (2005), is misplaced. *Champaign-Urbana Public Health* held that, under section 9(i), the employer had standing to appeal the Board's final order because the employer was a party to the representation proceeding and the certification order binds the employer to a

collective-bargaining relationship with the union. *Champaign-Urbana Public Health*, 354 Ill. App. 3d at 486. *County of Du Page* followed suit, holding that because an aggrieved party may seek review of a certification of representative, and because the employer's interests were implicated in the case, they had standing to maintain the appeal. *County of Du Page*, 358 Ill. App. 3d at 179. Neither opinion addressed the issue before us now.

In sum, we hold that section 9(a–5) precludes an employer from litigating the Board's determination that a union enjoys majority status and, consequently, that an employer is not entitled to review the evidence of majority support. The appellate court erred in requiring the Board to make this evidence available to the employer.

Our holding does not mean that the Board's certification order is immune from challenge and review. "[T]he interest in making administrative agencies conform to the law compels some judicial intervention." *Greer*, 122 Ill. 2d at 495. Thus, other aspects of the Board's order may be challenged. Although we will not attempt to set out an exhaustive list of the issues an employer may raise before the Board and on review, we note that, in addition to claims of fraud or coercion, an employer may challenge, as it did here, the Board's interpretation of the Act and the appropriateness of the bargaining unit. The employer may also raise other issues pertinent to the facts of the case. See 5 ILCS 315/9(a–5) (West 2004); 80 Ill. Adm. Code §1210.100(b)(3) (as amended at 28 Ill. Reg. 4172, eff. February 19, 2004).

III. Appropriateness of the Bargaining Unit

The proposed bargaining unit, as described in the Union's majority interest petition, included "[a]ll Deputy Sheriffs below the rank of sergeant in the Sheriff's Administrative Bureau, Law Enforcement Bureau, Fugitive Apprehension Unit within the Corrections Bureau, School Liaison Unit, Gang Suppression/Problem Investigation Unit, Du Page County Metropolitan Enforcement Group (DUMEG) Consortium and Beat Auto Theft Through Law Enforcement (BATTLE) Consortium," and excluded "Deputy Sheriffs below the rank of sergeant employed by the County of DuPage and the Sheriff of DuPage County in the Sheriff's

Corrections Bureau in positions in the county jail, the Sheriff's Work Alternative Program, the Young Adult Work Camp, the periodic Imprisonment unit, the Corrections Transport Unit and the Release and Detention (R&D) unit; Deputy Sheriffs of the rank of sergeant and above; all supervisory, managerial and confidential employees as defined by the Act; all civilian and non-peace officer employees of the Sheriff's Department, and all other employees of the County of DuPage and Sheriff of DuPage County." The Board rejected the Employer's argument that the foregoing unit was inappropriately narrow and determined that no unit issues existed that warranted a hearing.

According to the appellate court opinion, the Employer argued on administrative review "that the Board erred by excluding deputies who were assigned to the corrections bureau of the Sheriff's office from the bargaining unit." 375 Ill. App. 3d at 766. The appellate court, however, never reached this issue because it vacated the Board's certification order based on the court's interpretation of the evidentiary requirement of section 9(a–5). Because we have already held that the appellate court erred in vacating the Board's order, we remand this matter to the appellate court to consider the Board's ruling on the appropriateness of the bargaining unit. See *Waste Management of Illinois, Inc. v. Illinois Pollution Control Board*, 145 Ill. 2d 345, 352-53 (1991) (where this court reversed the appellate court decision on administrative review and remanded the matter to the appellate court to consider issue raised on review but not considered).

### IV. Attorney Fees

After entry of the appellate court opinion in this case, the Employer filed a petition in the appellate court, pursuant to section 10–55(c) of the Administrative Procedure Act (5 ILCS 100/10–55(c) (West 2006)), seeking attorney fees of $47,254.50. Section 10–55(c) provides that a court shall award reasonable litigation expenses, including reasonable attorney fees, "[i]n any case in which a party has any administrative rule invalidated by a court for any reason, including but not limited to the agency's exceeding its statutory authority or the agency's failure to follow statutory procedures in the adoption of the rule." 5 ILCS 100/10–55(c) (West 2006). The

appellate court opinion expressly invalidated section 1210.80(d)(2)(A) of the Board's rules because they did not require two forms of evidence of majority support and did not require dues deduction authorization evidence. 375 Ill. App. 3d at 777.

While the fee petition was pending, the Board filed its petition for leave to appeal, which we allowed. Shortly thereafter the appellate court entered an order awarding the Employer the full amount of fees requested. Because the fee award postdated the filing of the Board's petition for leave to appeal, the Board did not include any fee issue in its petition. The Board, however, did challenge the fee award in its opening brief filed in this court, and included copies of the fee petition, the Board's response, and the Employer's reply in the Board's separate appendix. The Employer argues that the Board forfeited review of the propriety of the fee award. See *Buenz v. Frontline Transportation Co.*, 227 Ill. 2d 302, 320 (2008) ("party's failure to raise an issue in its petition for leave to appeal may be deemed a forfeiture of that issue").

The method the Board used to bring the fee issue before this court was improper. The Board could have sought an extension of time in which to file its petition for leave to appeal, pending a ruling on the Employer's fee petition in the appellate court. The Board might also have filed a motion in this court seeking to amend its petition for leave to appeal. Nonetheless, we recognize that, in light of our ruling that the appellate court erred in invalidating section 1210.80(d)(2)(A) of the Board's rules, the fee award to the Employer was improper. Accordingly, in the interest of justice, we choose to exercise our supervisory authority and vacate the appellate court order, entered on December 4, 2007, which awarded the Employer $47,254.40 in attorney fees.


CONCLUSION

For the reasons stated, we reverse the judgment of the appellate court vacating the Board's certification order, and remand this matter to the appellate court to consider the bargaining unit issue raised by the Employer. We also reverse the appellate court's order awarding attorney fees to the Employer.

*Reversed;*
*cause remanded.*

JUSTICE THOMAS, concurring in part and dissenting in part:

I concur with that portion of the majority opinion that holds that the employer is not allowed to review the union's evidence of majority support. I disagree, however, with the majority's conclusion that "and" in the second sentence of section 9(a–5) means "or." I agree with the appellate court's construction of section 9(a–5), and I would therefore affirm that portion of its opinion that invalidated the Board's regulation as conflicting with the statute. I would also uphold the appellate court's attorney fees award. Consequently, I would not remand the cause to the appellate court to address the employer's argument about the appropriateness of the bargaining unit.

The appellate court correctly held that the Board improperly certified MAP as the exclusive representative without requiring dues deduction authorizations and other evidence. Section 9(a–5) is clear on this point: "the Board shall ascertain the employees' choice of employee organization, on the basis of dues deduction authorization and other evidence." 5 ILCS 315/9(a–5) (West 2006). The majority ignores the statute's clear directive, concluding that the legislature's use of the word "and" in this sentence means "or." Slip op. at 12. The majority notes that a secondary definition of the word "and" is "or" and cites a dictionary definition that gives examples in which "and" unquestionably means "or." Slip op. at 9. Of course, the *primary* meaning of the word "and," according to the majority's own sources, is "along with or together with" (Webster's Third New International Dictionary 80 (1993)), or "[a] conjunction connecting words or phrases expressing the idea that the latter is to be added to or taken along with the first. Added to; together with; joined with; as well as; including" (Black's Law Dictionary 86 (6th ed. 1990)).

For this reason, courts generally presume that when the legislature uses the word "and" it intends that the term be used in its conjunctive sense. Indeed, we recently described this rule as "obvious":

> "The pertinent conditions of section 8 are plainly joined with the term 'and.' This court long ago observed the obvious:

'The conjunction "and" *** signifies and expresses the relation of addition.' *City of LaSalle v. Kostka*, 190 Ill. 130, 137 (1901). Of course, the word 'and' is sometimes considered to mean 'or,' and vice versa, in the interpretation of statutes. However, '[t]his is not done except in cases where there is an apparent repugnance or inconsistency in a statute that would defeat its main intent and purpose. When these words are found in a statute and their accurate reading does not render the sense dubious they should be read and interpreted as written in the statute.' *Voight v. Industrial Comm'n*, 297 Ill. 109, 114 (1921). ' "As a general rule, the use of the conjunctive, as in the word 'and,' indicates that the legislature intended for *all* of the listed requirements to be met. [Citations.]" (Emphasis in original.)' *Byung Moo Soh v. Target Marketing Systems, Inc.*, 353 Ill. App. 3d 126, 131 (2004), quoting *Gilchrist v. Human Rights Comm'n*, 312 Ill. App. 3d 597, 602 (2000)." *People v. A Parcel of Property Commonly Known as 1945 North 31st Street, Decatur, Macon County, Illinois*, 217 Ill. 2d 481, 500-01 (2005).

According to the majority, however, when the legislature used the word "and" in between the types of evidence required ("dues deduction authorization and other evidence") it really meant "dues deduction authorization *or other similar evidence.*"

To the majority's credit, it does acknowledge that it may only assign the meaning "or" to the word "and" if giving "and" its conjunctive meaning renders the statute dubious or creates an inconsistency that defeats the statute's main intent and purpose. See slip op. at 9. The Board argues that such an inconsistency is found when the second sentence of section 9(a–5) is compared with the third. The second sentence, which sets forth the necessary evidentiary burden for a showing of majority interest, states that a determination of majority interest shall be made "on the basis of dues deduction authorization and other evidence." 5 ILCS 315/9(a–5) (West 2006). The third sentence, which deals with showings of fraud or coercion, provides that, "If either party provides to the Board, before the designation of a representative, clear and convincing evidence that the dues deduction authorizations, and other evidence upon which the Board would otherwise rely to ascertain the employees' choice of

-22-

representative, are fraudulent or were obtained through coercion, the Board shall promptly thereafter conduct an election." 5 ILCS 315/9(a–5) (West 1996). Both parties to this dispute agree that, in this sentence, "and" means "or." In other words, if evidence is provided that *any* of the evidence of majority support was the product of fraud or coercion, an election is required. The appellate court did not find that this was a problem, however, noting that the two sentences serve different purposes and that the legislature placed a comma before "and" in the third sentence and not in the second. 375 Ill. App. 3d at 774-75.

The Board sees an inconsistency, however. According to the Board, the second sentence cannot mean that dues deduction authorizations and other evidence are *both* required, because the third sentence provides that the Board may "otherwise" rely on other evidence. As the appellate court correctly explained, however, this represents a misunderstanding of the word "otherwise." The term "otherwise" does not, as the majority and the Board believe, mean "in lieu of." Rather, it means "under different circumstances." See 375 Ill. App. 3d at 775, quoting Webster's Third New International Dictionary 1598 (1986). Thus, as the appellate court explained, the different circumstances are those in which there is no fraud or coercion. 375 Ill. App. 3d at 775. In other words, the third sentence would mean:

> If either party provides to the Board, before the designation of a representative, clear and convincing evidence that the dues deduction authorizations, and other evidence upon which the Board would *absent fraud or coercion* rely to ascertain the employees' choice of representative, are fraudulent or were obtained through coercion, the Board shall promptly thereafter conduct an election.

Thus, because "and" can be read in its conjunctive sense without creating an inconsistency in the statute or rendering the sense of the statute dubious, we must give it that reading. See *A Parcel of Property Commonly Known as 1945 North 31st Street*, 217 Ill. 2d at 500-01.

Despite explicitly acknowledging that the statute can be read with "and" having its conjunctive sense without creating an inconsistency in the statute or rendering the sense of the statute dubious (slip op. at

10), the majority inexplicably does not end its analysis there, but rather continues to construe the statute to resolve the ambiguity. The majority's analysis follows this pattern: (a) the statute is ambiguous because "and" can be read either as "and" or as "or"; (b) the rule we have for resolving such ambiguities is that "and" must be given its conjunctive meaning if we can do so without creating an inconsistency in the statute or rendering the sense of the statute dubious; (c) here, giving "and" its conjunctive sense can indeed be harmonized with the statute as a whole, including the "otherwise" clause; (d) however, the use of the disjunctive "or" can also be harmonized with the statute as a whole; (e) consequently, the statute is ambiguous and we must resort to other aids of construction. Two problems are immediately apparent. First, the majority, with no explanation, elevates the disjunctive meaning to the same status as the conjunctive meaning, improperly considering whether it can be harmonized with the statute as a whole. Second, if all that our rule for resolving whether "and" means "and" or "or" does is to get you back to the original ambiguity, then that rule has no meaning or function. This is obviously not how the rule has been applied previously. See, *e.g.*, *People v. A Parcel of Real Property Commonly Known as 1435 North 31st Street*, 217 Ill. App. 3d at 500-01.

Because our rule for resolving the meaning of "and" answers the question, I would end the analysis there and not consider other statutory construction aids. I will, however, briefly comment on the other statutory construction aids relied upon by the majority. First, the majority claims that the legislative history supports its interpretation. In support, the majority cites the statements of a single legislator that the intent of section 9(a–5) was to replace the lengthy and cumbersome election process with a process called "card check." Slip op. at 10. The majority states that it does not believe that the legislature would have complicated the card-check procedure by requiring two forms of evidence: a dues checkoff card and some other unspecified form of evidence. Slip op. at 10. The majority does not explain, however, what would be so cumbersome about obtaining employee signatures on more than one piece of evidence, particularly as compared to organizing and conducting an election. Card-check procedures have been recognized as less reliable than secret ballot elections in determining majority support. See, *e.g.*, *In re Joe Hearin,*

-24-

*Lumber*, 66 N.L.R.B. 1276, 1283 (1946) ("We do not feel, however, that a card check reflects employees' true desires with the same degree of certainty as such an election"). As the Seventh Circuit has recognized:

> "Workers sometimes sign union authorization cards not because they intend to vote for the union in the election but to avoid offending the person who asks them to sign, often a fellow worker, or simply to get the person off their back, since signing commits the worker to nothing (except that if enough workers sign, the employer may decide to recognize the union without an election). See *NLRB v. S.S. Logan Packing Co.*, 386 F.2d 562, 565 (4th Cir. 1967); *NLRB v. Gruber's Super Market, Inc., supra*, 501 F.2d at 705; *Walgreen Co. v. NLRB, supra*, 509 F.2d at 1020, 1023 (dissenting opinion). A study referred to in the *Logan Packing* case found that even where the union had authorization cards from between 50 and 70 percent of the employees, it won only 48 percent of the elections. See 386 F.2d at 565. (The study itself gives the figure 52 percent, but this is evidently an arithmetical error, since the study reports that the union won 42 out of 87 elections, which is 48 percent. McCulloch, *A Tale of Two Cities: Or Law in Action*, Proceedings of ABA Section of Labor Relations Law 14, 17 (1962).) Another study found that 18 percent of those signing authorization cards did not want union representation at the time they signed. See Getman, Goldberg & Herman, *supra*, at 132." *National Labor Relations Board v. Village IX, Inc.*, 723 F.2d 1360, 1371 (7th Cir. 1983).

Thus, it is quite possible that the legislature required two forms of evidence as a way to help ensure that the union truly had majority support. Moreover, is Senator Sandoval's statement that the legislature intended to implement a "card check" procedure really supportive of the majority's position that dues check-off cards are merely optional?[1] Is it not just as reasonable to conclude that if the

---

[1]Senator Sandoval's statement suggests yet a third possible interpretation of section 9(a–5): dues deduction authorization and *any* other

legislature's intent is to enact a "card check" procedure and if the legislature then enacts a statute requiring "dues deduction authorization and other evidence," the legislature intended for the union to submit dues check-off cards as proof of majority support?

Next, the majority finds support for its interpretation in the fact that section 9(a–5) was modeled after a New York statute that also contains the phrase "dues deduction authorization and other evidence." The majority notes that the New York labor board promulgated a regulation pursuant to this statute that uses the disjunctive. The regulation in question provides that majority support may be demonstrated by the " 'execution of dues deduction authorization cards which are current or individual designation cards.' "[2] (Emphasis omitted.) Slip op. at 11, quoting N.Y. Comp. Codes R. & Regs. tit. 4, §201.9(g)(1) (2008). The majority then states that it presumes that the legislature was aware of this regulation when it modeled its statute after the New York statute and, thus, the legislature must have intended "and" to mean "or." In other words, according to the majority, the legislature was aware that the New York statute used "and," while the regulation used "or," but then, rather than clear up the confusion by using the word "or" in the Illinois statute, the legislature instead used "and" and rolled the dice on the chance that the Board would conclude that "and" means "or." I am unwilling to ascribe such irrational behavior to the legislature.

Finally, the majority states that to the extent that there is any doubt as to the meaning of the statute, we should defer to the Board's

---

evidence. In other words, this provision could mean that the union may submit whatever evidence it wants to demonstrate majority support, but, at a minimum, it must submit dues deduction authorizations. I do not find it supportive of the majority's conclusion that dues deduction authorizations are optional.

[2]It is worth noting that New York's regulation, although using the disjunctive, puts a far more restrictive interpretation on the phrase "dues deduction authorization and other evidence" than does the Illinois regulation, which provides that *anything* can be submitted to demonstrate majority support. See 80 Ill. Adm. Code §1210.80(d)(2)(A) (as amended at 28 Ill. Reg. 4172, eff. February 19, 2004).

interpretation. Again, however, I do not believe that we ever get to this step because our rule for determining the meaning of "and" requires us to read it in the conjunctive in this case. Consequently, there is no need to defer to the Board's interpretation.

At most, then, the majority has demonstrated only that the statute is ambiguous and that there are at least two ways to read it. What the majority has *not* demonstrated is that the statute cannot be read giving "and" its conjunctive meaning without creating a statutory inconsistency or rendering the sense of the statute dubious. Therefore, we must apply the "obvious" (see *A Parcel of Property Commonly Known as 1945 North 31st Street*, 217 Ill. 2d at 500-01) rule that "and" means "and" and uphold the appellate court's interpretation of the statute. Accordingly, I would hold that the appellate court correctly reversed the certification order because the Board did not require MAP to submit the evidence of majority support required by the legislature.

JUSTICES GARMAN and KARMEIER join in this partial concurrence and partial dissent.